**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| KATHRYN FORTUNATO, | ) CASE NO. 1:15-cv-1940 PAG |
| | ) |
| Plaintiff, | ) JUDGE PATRICIA A. GAUGHAN |
| | ) |
| vs. | ) |
| | ) |
| UNIVERSITY HOSPITALS PHYSICIAN | ) |
| SERVICES, INC., | ) |
| | ) |
| Defendant. | |

## <u>DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, Defendant University Hospitals Physician Services, Inc. ("Defendant" or "UHPS") hereby moves this Court for summary judgment on the claims asserted by Plaintiff Kathryn Fortunato ("Plaintiff" or "Fortunato"). There are no genuine issues of material fact in dispute and Defendant is entitled to judgment as a matter of law. A Memorandum in Support of this motion is attached.

Respectfully submitted,

*/s/Liana R. Hollingsworth*
David A. Campbell (0066494)
Liana R. Hollingsworth (0085185)
Vᴏʀʏs, Sᴀᴛᴇʀ, Sᴇʏᴍᴏᴜʀ ᴀɴᴅ Pᴇᴀsᴇ LLP
200 Public Square, Suite 1400
Cleveland, Ohio 44114
Telephone: (216) 479-6100
Fax: (216) 479-6060
Email: dacampbell@vorys.com
lrhollingsworth@vorys.com

*Attorneys for Defendant University Hospitals Physician Services, Inc.*

## TABLE OF CONTENTS

**PAGE**

STATEMENT OF ADHERENCE TO LOCAL RULE 7.1 ......................................................... 1

I.    STATEMENT OF THE ISSUES TO BE DECIDED ........................................................ 2

II.   SUMMARY OF THE ARGUMENT ............................................................................... 2

III.  FACTS ............................................................................................................................ 3

    A.    Plaintiff's Employment with UHPS ................................................................... 3

    B.    Plaintiff's Performance Issues ............................................................................ 4

    C.    Plaintiff's Discharge ........................................................................................... 6

    D.    Plaintiff's Alleged Disability .............................................................................. 7

    E.    Plaintiff's Allegations of Age Discrimination ................................................... 8

IV.   LAW AND ARGUMENT ................................................................................................ 8

    A.    Standard of Review ............................................................................................. 8

    B.    Plaintiff's Disability Discrimination Claims Under the ADA and R.C
           § 4112 Fail as a Matter of Law. ......................................................................... 9

          1.    Plaintiff Cannot Establish a Failure to Accommodate Claim. .................. 11

          2.    Plaintiff Cannot Establish Her Disability Discrimination (Disparate
               Treatment) Claim Because She Was Not Wrongfully Terminated
               on the Basis of Her Disability. .................................................................. 13

    C.    Plaintiff's Age Discrimination Claims Under the ADEA and R.C. §
           4112 Fail as a Matter of Law. ........................................................................... 17

          1.    Cannot Satisfy Her *Prima Facie* Case. .................................................... 17

          2.    If Plaintiff Could Establish A *Prima Facie* Case, Her Claim Still
               Fails Because She Cannot Prove That UHPS's Legitimate Non-
               Discriminatory Reason For Terminating Her Was A Pretext For
               Age Discrimination. .................................................................................. 18

V.    CONCLUSION .............................................................................................................. 20

# TABLE OF AUTHORITIES

**PAGE**

## CASES

*Aldini v. Kroger Co.*, 628 Fed. App'x 347, 352 (6th Cir. 2015).................................................. 13

*Anderson v. McCarthy, Burgess & Wolff, Inc.*, No. 1:14-CV-617, 2015 U.S. Dist.
  LEXIS 5198, *13 (N.D. Ohio Jan. 15, 2015) ......................................................... 20

*Becker v. Elmwood Local Sch. Dist.*, 519 Fed. App'x 339, 343  (6th Cir. 2013) ........................ 15

*Bush v. Dictaphone Corp.*, 161 F.3d 363, 369 (6th Cir. 1998).................................................... 20

*Caparanis v. Ford Motor Co.*, No. 1:13-cv-926, 2013 U.S. Dist. LEXIS 175955,
  *22-23 (N.D. Ohio Dec, 16, 2013) ................................................................. 14

*Cash v. Siegel-Robert, Inc.*, 548 Fed. Appx. 330, 335 (6th Cir. 2013)........................................ 12

*Cash*, 548 Fed. App'x at 335 ..................................................................................... 13

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ............................................................... 8

*Columbus Civil Serv. Comm'n v. McGlone*, 697 N.E.2d 204 (1998) ............................................ 9

*DiCarlo v. Potter*, 358 F.3d 408, 418 (6th Cir. 2004) ...................................................... 9

*Fishbauch v. City of Toledo*, 798 F.Supp.2d 888, 895 (N.D. Ohio 2011) ................................... 11

*Garcia v. Whirlpool Corp.*, No. 3:08-CV-02944, 2010 U.S. Dist. LEXIS 118409
  (N.D. Ohio Nov. 5, 2010) ........................................................................ 8, 9

*Godfredson v. Hess & Clark, Inc.*, 173 F.3d 365, 371, 1999 U.S. App. LEXIS 6266,
  *10-11 (6th Cir. 1999) ......................................................................... 17

*Godfredson*, 173 F.3d at 372............................................................... 11, 17, 18

*Harrison v. McDonald's Corp.*, 411 F.Supp.2d 862 (S.D. Ohio 2005)........................................ 20

*Hodges v. City of Mulford*, 918 F.Supp.2d 721, 739 (S.D. Ohio 2013) ..................................... 16

*Hughey v. CVS Caremark Corp.*, 629 Fed. App'x 648, 650-651 (6th Cir. 2015) ......................... 17

*Jett v. Am. Nat'l Red Cross*, 3 F. Supp. 3d 695, 702 (S.D. Ohio 2014)....................................... 17

*Lovas v. Huntington Nat'l Bank*, 2000 U.S. App. LEXIS 11840, *7-8 (6th Cir. May
  22, 2000)........................................................................................ 9

*Myers v. Cuyahoga County*, 182 Fed. App'x 510, 515 (6th Cir. May 31, 2006) ........................ 11

*Pflanz v. Cincinnati*, 149 Ohio App. 3d 743, 2002 Ohio 5492, 778 N.E.2d 1073, 1080 (Ohio Ct. App. 2002) ........................................................................ 10

*Plant v. Morton Intern., Inc.*, 212 F.3d 929 (6th Cir. 2000) ........................... 9

*Smith v. Leggett Wire Co.*, 220 F.3d 752, 759 (6th Cir. 2000) ..................... 19

*Staunch v. Cont'l Airlines, Inc.*, 511 F.3d 625, 631, 2008 U.S. App. LEXIS 196 (6th Cir. 2008) ................................................................................... 15

*Stockman v. Oakcrest Dental Ctr., P.C.*, 480 F.3d 791, 802, 2007 U.S. App. LEXIS 6076 (6th Cir. 2007) ........................................................................ 19

*Sutherland v. Mich. Dep't of Treasury*, 344 F.3d 603 (6th Cir. 2003) ........... 16

*Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1105 (6th Cir. 2008) ............. 14, 15

*Weatherby v. Fed. Express*, 454 Fed. App'x 480, 489 (6th Cir. 2012) ......... 18

*White v. Std. Ins. Co.*, 529 Fed. App'x 547, 579 (6th Cir. 2013).................. 14

## STATUTES

Age Discrimination in Employment Act, 29 USC Section 621, *et seq.* ......................................... 9

Americans with Disabilities Act, 42 USC Section 12101, *et seq.* .................................................. 9

O.R.C. § 4112.02 ............................................................................................. 9

O.R.C. § 4112.14 ............................................................................................. 9

Ohio Rev. Code § 4112.01(A)(13) ................................................................... 9

## RULES

Fed. R. Civ. P. 56.............................................................................................. 8

Fed. R. Civ. P. 56(c) ......................................................................................... 1

Local Rule 7.1 ................................................................................................... 1

## STATEMENT OF ADHERENCE TO LOCAL RULE 7.1

This Memorandum in Support adheres to the page limitations set forth in Local Rule 7.1 of the United States District Court for the Northern District of Ohio.  The present action is assigned to the standard case management track.

## I.     STATEMENT OF THE ISSUES TO BE DECIDED

1.     Whether summary judgment should be granted in favor of Defendant on Plaintiff's failure to accommodate claims under state and federal law.

2.     Whether summary judgment should be granted in favor of Defendant on Plaintiff's claims of disability discrimination (disparate treatment) under state and federal law.

3.     Whether summary judgment should be granted on Plaintiff's claims for age discrimination under state and federal law.

## II.    SUMMARY OF THE ARGUMENT

Plaintiff Kathryn Fortunato ("Plaintiff" or "Fortunato") was employed by Defendant University Hospitals Physician Services, Inc. ("Defendant" or "UHPS") from 2001 through 2014.  Plaintiff struggled with performance issues throughout her employment.  From 2001 through 2010, Plaintiff received multiple corrective actions and was placed on two Performance Improvement Plans ("PIP").  At her deposition, Plaintiff testified that she had issues with scheduling patients, maintaining patient charts and records, working the telephones and relaying messages, using the patient scheduling software, communicating with patients, and turning in her timecard on time.  Plaintiff's employment with UHPS was terminated on October 29, 2014 after Plaintiff failed to satisfy a final PIP that was issued to her on August 19, 2014.  Following her discharge, Plaintiff's duties were subsumed by her two co-workers.  Plaintiff was never replaced by UHPS.

Despite these undisputed facts, Plaintiff asserts claims of disability and age discrimination arising out of her discharge.  Plaintiff's deposition testimony confirms that summary judgment should be entered in favor of UHPS on all claims asserted.

As to disability discrimination, Plaintiff alleges that she informed UHPS of her alleged

disability in 2008 – six years before her eventual discharge.  Moreover, Plaintiff never requested any accommodations during her employment with UHPS and she admits that her physician has never given her any work restrictions relating to her alleged disability.  Finally, Plaintiff further admits that one of her two co-workers suffered from the same impairment, advised UHPS of the impairment, but was not discharged.  Put simply, Plaintiff has no evidence to support a disability claim.

As to age discrimination, Plaintiff admits that none of her supervisors ever made any age-based comments.  Moreover, the two employees who held similar positions to Plaintiff were also over the age of forty and one of the two was the same age as Plaintiff.  Finally, Plaintiff was never replaced and there is a long-record of Plaintiff's poor performance.  Accordingly, Plaintiff also cannot prove her claim of age discrimination.

## III.    FACTS

### A.      Plaintiff's Employment with UHPS

Defendant first hired Plaintiff as a temporary Doctor's Secretary in May of 2001, when Plaintiff was 53 years old.  (*See* Deposition of Plaintiff at 49 and Ex. 4 (hereinafter "Plaintiff Dep. at _"), attached hereto as Exhibit 1).   In 2003, Plaintiff became a full-time Doctor's Secretary and remained in that position throughout the duration of her employment.  (Plaintiff Dep. at 49; *see also* Plaintiff's Complaint at ¶ 5 (hereafter "Compl. at _")).   At the time of Plaintiff's termination, she worked with two other Doctor's Secretaries, Carol Campbell and Antoinette Buckner, both of whom Plaintiff testified are over the age of 40.  (Plaintiff Dep. at 92; Declaration of Deborah Conti at ¶ 4 (hereinafter "Conti Decl. at ¶ _"), attached hereto as Exhibit 2).  In fact, Plaintiff believes that Ms. Campbell is 66 or 67 years old – only one year younger than Plaintiff.   (Plaintiff Dep. at 92).  In spring of 2013, Deb Conti (age 50) began supervising Plaintiff and remained her supervisor until Plaintiff's separation in October of 2014.  (Plaintiff

Dep. at 11, 22 and 93; Conti Decl. at ¶¶ 2-3).

**B.      Plaintiff's Performance Issues**

Plaintiff struggled with performance issues throughout her employment with UHPS. (Plaintiff Dep. at 26, 42, 45, 65, 75-77, 98, 100 and Ex. 2 and 8-12; Compl. at ¶ 17-18).  From 2001 through 2010, Plaintiff received multiple corrective actions and was placed on two Performance Improvement Plans ("PIP").  (Plaintiff Dep. at 57-59 and Ex. 7).  Specifically, Plaintiff testified that she had issues with scheduling patients, maintaining patient charts and records, working the telephones and relaying messages, using the patient scheduling software, communicating with patients, and turning in her timecard on time.  (*Id.*)  Despite repeated coaching, Plaintiff's performance did not improve.  (Plaintiff Dep. at 26, 42, 45, 65, 75-77, 98, 100 and Exs. 8-12).

In response to a push by the federal government to move towards electronic records keeping, UHPS transitioned to a new billing system and the electronic storing of medical charts in May of 2013. (Plaintiff Dep. at 17-18, 29-31 and 34-35; Conti Decl. at ¶ 7).  As part of this transition, hard copies of patient files were placed in boxes and moved to off-site storage.  In order to keep track of the paper files, information regarding the files, including the unique bar code on each box of files, needed to be input into an Excel spreadsheet for electronic storage and searching.  (Plaintiff Dep. at 34-35 and 38-39).

All Doctor's Secretaries within Plaintiff's department, including Plaintiff, were in charge of inputting this information into Excel.  (Plaintiff Dep. at 34; Conti Decl. at ¶ 7).  However, Plaintiff was unable to use Excel and admittedly made numerous mistakes.  (Plaintiff Dep. at 15-16, 29-30, 35, 38, 44 and 97; Compl. at ¶¶ 17-18).  In her deposition, Plaintiff admitted that she understood the importance of UHPS maintaining patient records and being able to quickly locate them.  (Plaintiff Dep. at 35).  However, Plaintiff refused to follow the proper procedure for

4

inputting the information into Excel.  (Plaintiff Dep. at 38-39).  Instead of electronically entering the information, Plaintiff would print out an Excel spreadsheet and handwrite the information on the paper spreadsheet – making electronic searching impossible.  (Plaintiff Dep. at 15-16).  When Ms. Conti discovered the problem, she instructed Plaintiff to follow the correct procedures.  (*See* Plaintiff Dep. at 35-36 and 38-39; Conti Decl. at ¶ 8).  Rather than following the Ms. Conti's instructions, Plaintiff chose another flawed method.  Plaintiff chose to type the information into a Word document, print the document, and then rewrite new information over the same document, once again leaving no searchable electronic record.  (Plaintiff Dep. at 41-42; Conti Decl. at ¶ 8).

Contrary to Plaintiff's allegations that she was not provided training, Plaintiff admitted that UHPS provided her with access to a training computer with Excel.  (Plaintiff Dep. at 38 and Ex. 2; Compl. at ¶ 16).  Additionally, UHPS sent Plaintiff to training classes at Athena pertaining to UHPS' new billing and patient scheduling software between May and December of 2013.  (Conti Decl. at ¶ 9).  However, Athena was reluctant to provide Plaintiff with a username and password because they did not believe that Plaintiff was competent with the programs.  (Conti Decl. at ¶ 9).  Plaintiff testified that she never once attempted to input the information into Excel.  (Plaintiff Dep. at 37).  In fact, Plaintiff testified that she purchased an Excel training CD while she was still employed at UHPS, but admitted that despite having an Excel program at home, to this day, she has never used Excel.  (Plaintiff Dep. at 16).

As a result of Plaintiff's performance issues and inability to learn and conform to UHPS' new procedures for record-keeping and patient billing and scheduling, Plaintiff was placed on a PIP on December 2, 2013.  (Plaintiff Dep. at 67-71 and Ex. 9).  The PIP showed that Plaintiff's performance issues extended far beyond Excel and included the same performance deficiencies

Plaintiff exhibited since she started at UHPS. For example, the PIP noted that Plaintiff struggled to effectively communicate with co-workers and patients and properly use the telephones. (*Id.*). While Plaintiff denies some of the issues in her PIP, she admitted in her deposition that she had problems with: patient scheduling; communicating with patients; co-workers and superiors; working cooperatively with co-workers; and using the telephones, among other issues. (Plaintiff Dep. at 26, 42, 45, 65, 75-77, 98 and 100).

On August 19, 2014, Plaintiff received a "Does Not Meet Expectations" on her performance evaluation. (Plaintiff Dep. at 59-60 and Ex. 10). Plaintiff received marks of "Does Not Meet Expectations" in all but two categories, where she received the second-lowest rating of "Frequently Meets Expectations." (Plaintiff Dep. at Ex. 10). Notably, Plaintiff received a mark of "Does Not Meet Expectation" for all the areas of improvement identified in her December 3, 2013 PIP. (Plaintiff Dep. at Exs. 8-9).

In response to Plaintiff's continued performance issues, she was placed on another PIP on August 19, 2014. (Plaintiff Dep. at 71-72 and Ex. 10). The August 19, 2014 PIP outlined the same areas contained in the December 3, 2013 PIP which required improvement. (Plaintiff Dep. at Exs. 9-10). Both the December 3, 2013 PIP and the August 19, 2014 PIP plainly state that the "[f]ailure to meet the expectations set forth in this Performance Improvement Plan will result in further discipline up to and including the termination of your employment." (*Id.*). Plaintiff admitted that she was aware that her placement on a PIP could lead to her discharge. (Plaintiff Dep. at 65 and 121). Plaintiff also admitted during her deposition that she was not performing at an acceptable level. (Plaintiff Dep. at 26 and Ex. 2).

**C.**     **Plaintiff's Discharge**

As a result of Plaintiff's continued poor performance and failure to successfully meet the expectations outlined in her August 19, 2014 PIP, Ms. Conti, in consultation with Human

Resources, decided to separate Plaintiff's employment on October 29, 2014.  (Plaintiff Dep. at 73-74 and Ex. 11; Compl. at ¶ 5; Conti Decl. at ¶ 11).   After Plaintiff's termination, UHPS decided to eliminate Plaintiff's position.  (Conti Decl. at ¶ 13).  Plaintiff's duties were subsumed by the two remaining Doctor's Secretaries in Plaintiff's department, Ms. Campbell and Ms. Buckner.  (Conti Decl. at ¶ 13).  Both Ms. Campbell and Ms. Buckner are still employed with UHPS.  (Plaintiff Dep. at 92-93; Conti Decl. at ¶ 4).

###  D.    **Plaintiff's Alleged Disability**

Plaintiff alleges that she was first diagnosed with depression in September of 2008. (Plaintiff Dep.at 23-24 and 109-110).  Plaintiff first notified UHPS of her depression when she submitted a letter from Dr. Levin, her personal physician (the "Letter").  (Plaintiff Dep. at 24-25 and Ex. 3 at page 10).  The Letter stated only that Plaintiff was undergoing treatment for an anxiety disorder, and did not mention depression.  (Plaintiff Dep. at 24-25 and Ex. 3 at page 10). Plaintiff testified that the Letter is the only document that she ever provided to UHPS pertaining to any alleged disability.  (*Id.*).  Plaintiff admits that she did not make any other reference to any alleged disability or medical issue until she made a written comment on her December 3, 2013 Performance Improvement Plan.  (Plaintiff Dep. at 109-110 and Ex. 9).  Plaintiff's written comment simply references that she had a "medical issue" which was "treated inpatient" and does not mention depression.  (*Id.*).  Plaintiff also alleges that she informed UHPS – specifically, Ms. Conti and an unidentified individual within UHPS' HR department – that she was taking medication for depression during several performance evaluation meetings in 2014, and then again 30 days prior to her termination.  (Plaintiff Dep. at 77-78, 99 and Ex. 2; Compl. at ¶¶ 27, 44).

Although Plaintiff alleges that she notified UHPS of her disability, she testified that she never requested that UHPS provide her with an accommodation for her disability.  (Plaintiff Dep.

7

at 47-48).  Moreover, Plaintiff testified that she never had any work restrictions based on her disability or for any other reason.  (Plaintiff Dep. at 8-9).  Finally, Plaintiff testified that Ms. Campbell, one of her two co-workers holding similar positons, similarly suffers from depression and was taking medication as a result.  (Plaintiff Dep. at 87 and 104-105).

### E.     Plaintiff's Allegations of Age Discrimination

Plaintiff testified that she "doesn't know a thing" in regards to whether UHPS replaced her after her termination – let alone with someone under the age of 40.  (Plaintiff Dep. at 28-29). Plaintiff also testified that she overheard two unidentified individuals make stray remarks about age in a hallway.  (Plaintiff Dep. at 89-91).  Specifically, Plaintiff alleges that she was on the way to an appointment with Dr. Acheson and overheard two unidentified individuals state something in regards to employees being discharged once they reached a certain age.  (*Id.*). Plaintiff alleges that Dr. Acheson also heard this and allegedly told her that, generally, people were getting terminated around "this age." (*Id.*).  However, Plaintiff testified that no one at UHPS, including her supervisors and co-workers, ever made any age-based comments to her. (Plaintiff Dep. at 50 and 106).

## IV.     LAW AND ARGUMENT

### A.     Standard of Review

"A party is entitled to summary judgment on motion under Fed. R. Civ. P. 56 where the opposing party fails to show the existence of an essential element for which that party bears the burden of proof."  *Garcia v. Whirlpool Corp*., No. 3:08-CV-02944, 2010 U.S. Dist. LEXIS 118409, *8 (N.D. Ohio Nov. 5, 2010) (Carr, J.) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  As set forth below, the undisputed facts compel summary judgment in favor of UHPS.

8

Plaintiff brings disability discrimination claims under both the Americans with Disabilities Act ("ADA") and R.C. § 4112.02, as well as claims of age discrimination under the Age Discrimination in Employment Act ("ADEA") and R.C. § 4112.14.  (Compl. at ¶¶ 13, 21, 33, 41).  Because Ohio courts generally follow federal law in analyzing disability discrimination and age discrimination claims asserted under the Ohio Revised Code, Plaintiff's state and federal disability discrimination claims should be treated as one for purpose of analysis, and her state and federal age discrimination claims should similarly be addressed together.  *Garcia*, 2010 U.S. Dist. LEXIS 118409, *9 (*citing Plant v. Morton Intern., Inc*., 212 F.3d 929, 938-39 (6th Cir. 2000); *see also Columbus Civil Serv. Comm'n v. McGlone*, 697 N.E.2d 204 (1998) (noting that the ADA is similar to the Ohio law and looking to federal law in addressing the plaintiff's disability discrimination claim under R.C. § 4112); *see also Lovas v. Huntington Nat'l Bank*, 2000 U.S. App. LEXIS 11840, *7-8 (6th Cir. May 22, 2000) (holding that, because the ADEA and R.C. § 4112.14 are nearly identical, they can be analyzed together under federal law).

**B.**     **Plaintiff's Disability Discrimination Claims Under the ADA and R.C § 4112 Fail as a Matter of Law.**

Fortunato alleges that UHPS terminated her on the basis of her disability and failed to provide reasonable accommodations in violation of the ADA and the Ohio Revised Code.  (Compl. at ¶¶ 21-28 and 41-49).  Plaintiff's claims are without merit.

Both claims fail, as a matter of law, because Plaintiff cannot prove that she is disabled.  In order to be "disabled" under federal or Ohio law, Plaintiff must have a physical or mental impairment that (1) substantially limits one or more major life activities; (2) a record of such impairment; or (3) be regarded as having such an impairment. Ohio Rev. Code § 4112.01(A)(13); *DiCarlo v. Potter*, 358 F.3d 408, 418 (6th Cir. 2004); *Pflanz v. Cincinnati*, 149

Ohio App. 3d 743, 2002 Ohio 5492, 778 N.E.2d 1073, 1080 (Ohio Ct. App. 2002).   In this matter, Plaintiff cannot prove that she is disabled under any of these prongs.

Plaintiff provided scant documentation to UHPS regarding her alleged disability. Plaintiff alleges that she was first diagnosed with depression in September of 2008. (Plaintiff Dep.at 23-24 and 109-110).  Plaintiff first notified UHPS of her depression when she submitted a letter from Dr. Levin, her personal physician.  (Plaintiff Dep. at 24-25 and Ex. 3 at page 10). The Letter stated only that Plaintiff was undergoing treatment for an anxiety disorder, and did not mention depression.  (Plaintiff Dep. at 24-25 and Ex. 3 at page 10).  Plaintiff testified that the Letter is the only document that she ever provided to UHPS pertaining to any alleged disability. (*Id.*).   Plaintiff admits that she did not make any other reference to any alleged disability or medical issue until she made a written comment on her December 3, 2013 Performance Improvement Plan.  (Plaintiff Dep. at 109-110 and Ex. 9).  Plaintiff's written comment simply references that she had a "medical issue" which was "treated inpatient" and does not mention depression.  (*Id.*).  Plaintiff also alleges that she informed UHPS – specifically, Ms. Conti and an unidentified individual within UHPS' HR department – that she was taking medication for depression during several performance evaluation meetings in 2014, and then again 30 days prior to her termination.  (Plaintiff Dep. at 77-78, 99 and Ex. 2; Compl. at ¶¶ 27, 44).  This evidence simply does not support a finding that Plaintiff had a record of a disability.

Moreover, as to her actual restrictions, Plaintiff testified that she never had any work restrictions based on her depression or for any other reason.  (Plaintiff Dep. at 8-9).  Similarly, Plaintiff testified that she never requested that UHPS provide her with an accommodation for her depression.  (Plaintiff Dep. at 47-48).  Accordingly, the undisputed facts confirm that Plaintiff was not regarded by UHPS as being disabled and that Plaintiff cannot prove that she suffered

10

from an impairment that qualifies as a disability.  Therefore, both of her disability claims fail as a matter of law.

If, *arguendo*, Plaintiff can prove that she is disabled under Ohio or federal law, the claims fail because Plaintiff cannot prove multiple other elements of her disability claims.

### 1.    Plaintiff Cannot Establish a Failure to Accommodate Claim.

In order to establish a *prima facie* case for failure to accommodate under R.C. 4112 and the ADA, Plaintiff must prove that: (1) she is disabled; (2) she is otherwise qualified for the position, with or without reasonable accommodation; (3) UHPS knew or had reason to know about her disability; (4) she requested an accommodation; and (5) UHPS failed to provide the necessary accommodation.  *See Fishbauch v. City of Toledo*, 798 F.Supp.2d 888, 895 (N.D. Ohio 2011) (citing *Myers v. Cuyahoga County*, 182 Fed. App'x 510, 515 (6th Cir. May 31, 2006)).  Plaintiff cannot meet the second, fourth or fifth elements of her *prima facie* case.

Plaintiff cannot meet the second element of her *prima facie* case because she was not qualified for the position, with or without a reasonable accommodation, due to her continued poor performance.  *See Godfredson*, 173 F.3d at 372 ("[i]n order to show that a plaintiff is qualified, [she] must prove that [she] was performing [her] job at a level which met [her] employer's legitimate expectations") (internal citations omitted).  It is undisputed that Plaintiff had performance issues that persisted throughout her employment with UHPS.  Plaintiff testified that she "was not performing at an acceptable level" and had issues with scheduling patients and working the patient scheduling program, using the telephones and relaying messages, communicating with co-workers and patients, and responding to meeting invites.  (Plaintiff Dep. at 26, 42, 45, 75-77, 98, 100).  Plaintiff also admits that she was unable to operate Excel and refused to learn the program, despite repeated requests from Ms. Conti to do so.  (Plaintiff Dep.

11

at 15-16, 29-30, 35, 38-39, 44, 97). As a result of her poor performance, Plaintiff received poor performance evaluations and was placed on multiple PIPs, but refused to improve her performance. (Plaintiff Dep. at 57-58, 59-60, 67-68, 71-74 and Ex. 8-11).

Moreover, Plaintiff cannot prove that she would be qualified even with an accommodation because Plaintiff **never requested an accommodation**. *See Cash v. Siegel-Robert, Inc.*, 548 Fed. Appx. 330, 335 (6th Cir. 2013) ("[a]n employee who contends that [she] is otherwise qualified with a reasonable accommodation bears the initial burden to propose an accommodation and show that the accommodation is objectively reasonable"). Even if Plaintiff had requested an accommodation, it is unclear what that accommodation would be, since Plaintiff does not suggest any accommodation. In fact, the more likely case is that no such accommodation exists because Plaintiff was not qualified for her position due to her poor performance, not due to her alleged depression. While Plaintiff appears to rest her failure to accommodate claim on her allegation that her performance was unsatisfactory because UHPS did not provide her with training for Excel – which is incorrect, as UHPS did provide Plaintiff with training – the truth of the matter is that Plaintiff's performance issues extended far beyond Excel.[1] (Plaintiff Dep. at 26, 42, 45, 75-77, 98, 100 and Ex. 8-12). Moreover, Plaintiff admitted that UHPS provided its employees with a training computer that was equipped with Excel and that Plaintiff purchased a training CD *several months* prior to her termination, yet Plaintiff testified that she did not attempt to use either of these resources to learn Excel. (Plaintiff Dep. at 38, 114). The fact is, Plaintiff's performance issues and inability to learn Excel stem from her own refusal to perform satisfactory work and are wholly unrelated to her depression, and importantly, cannot be alleviated by any accommodation.

---

[1] Because Plaintiff never requested an accommodation – which she admits to – UHPS was not required to provide Plaintiff with any training for Excel.

Additionally, Plaintiff's failure to request an accommodation, alone, precludes her from establishing her *prima facie* case.  *See Cash*, 548 Fed. App'x at 335; *see also Aldini v. Kroger Co.*, 628 Fed. App'x 347, 352 (6th Cir. 2015) (finding summary judgment for employer proper where employee never requested an accommodation, because "[the Sixth Circuit] require[s] a request for reasonable accommodation…to establish a *prima facie* claim for failure to accommodate").  Plaintiff repeatedly testified to the fact that she **never requested an accommodation** during her employment with UHPS.  (Plaintiff Dep. at 46-48; Conti Decl. at ¶ 12).  In fact, Plaintiff admits that the only documentation she provided to UHPS in regards to her disability is the  Letter from her physician that dates back to 2008 that notifies UHPS that she is being treated for an anxiety disorder.  (Plaintiff Dep. at 25, 110).  The only other times Plaintiff made any reference to UHPS in regards to her disability were on her December 3, 2013 PIP and, according to Plaintiff, in her performance evaluation meetings with Ms. Conti and HR.  (Plaintiff Dep. at 77-78, 99 and Ex.2; Compl. at ¶¶ 27, 44).  However, none of these references included any request for an accommodation.  Moreover, not only did Plaintiff admit to never requesting an accommodation, Plaintiff also admits to never receiving any work restrictions for her disability whatsoever.  (Plaintiff Dep. at 9 and 26).  Accordingly, because Plaintiff never requested an accommodation for her disability, she fails to satisfy her *prima facie* case for reasonable accommodation.

> 2. **Plaintiff Cannot Establish Her Disability Discrimination (Disparate Treatment) Claim Because She Was Not Wrongfully Terminated on the Basis of Her Disability.**

> i. **Plaintiff Cannot Satisfy Her *Prima Facie* Case.**

Plaintiff has no direct evidence of discrimination and must, therefore, prove her case by relying on circumstantial evidence.  *See Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d

1099, 1105 (6th Cir. 2008).  In order for Plaintiff to satisfy her *prima faci*e case for disability discrimination based on disparate treatment with circumstantial evidence, Plaintiff must prove that: (1) she was disabled; (2) she was otherwise qualified for the position, with or without reasonable accommodation; (3) she suffered an adverse employment action; (4) UHPS knew or had reason to know of Plaintiff's disability; and (5) Plaintiff's position remained open while UHPS sought other applicants or Plaintiff was replaced.  *See Caparanis v. Ford Motor Co.*, No. 1:13-cv-926, 2013 U.S. Dist. LEXIS 175955, *22-23 (N.D. Ohio Dec, 16, 2013) (citing *White v. Std. Ins. Co.*, 529 Fed. App'x 547, 579 (6th Cir. 2013)).  Plaintiff cannot satisfy the second or fifth element of her *prima facie* case.

As set forth above, Plaintiff was not qualified for her position.  Plaintiff's *prima facie* case fails for the additional reason that UHPS did not replace Plaintiff after her termination or leave her position open.  Rather, Plaintiff's position was eliminated and her duties were assigned to two other secretaries within the same department, both of whom were employed by UHPS prior to Plaintiff's termination.  (Conti Decl. at ¶ 13).  "[A] person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work." *Godfredson*, 173 F.3d at 372.  Moreover, Plaintiff's allegation that she was replaced by someone is completely unfounded, as Plaintiff admits in her deposition that she "[doesn't] know a thing" with regards to UHPS bringing replacing her with another employee.  (Plaintiff Dep. at 28-29, 88).  Accordingly, because Plaintiff fails to satisfy her *prima facie* case for disability discrimination based on disparate treatment, Plaintiff's claim should be dismissed.

14

### ii.  Even if Plaintiff Could Establish A *Prima Facie* Case of Disability Discrimination, Her Claim Still Fails Because She Was Terminated For a Legitimate Nondiscriminatory Reason Which Was Not Pretextual.

Assuming, *arguendo*, that Plaintiff is able to prove her *prima facie* cases for her disability discrimination claims under Ohio and federal law – which she cannot – Plaintiff cannot prove that UHPS' legitimate non-discriminatory reason for terminating her – her poor performance – was unlawful pretext for discrimination. *See Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1105 (6th Cir. 2008) (if the plaintiff is able to establish a *prima facie* case of discrimination, the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for its action, and if the employer meets this burden, the plaintiff is then required to show by a preponderance of the evidence that the employer's reasons were not legitimate, but merely pretext for discrimination).   In order to establish pretext, Plaintiff must prove that UHPS' decision to terminate her due to her poor performance: (1) had no basis in fact; (2) did not actually motivate the adverse action; or (3) was insufficient to motivate the adverse action. *Staunch v. Cont'l Airlines, Inc.*, 511 F.3d 625, 631, 2008 U.S. App. LEXIS 196 (6th Cir. 2008).

Plaintiff's poor performance was a sufficient reason to motivate UHPS to terminate her employment.  *See Becker v. Elmwood Local Sch. Dist.*, 519 Fed. App'x 339, 343  (6th Cir. 2013) ("[p]oor performance is a legitimate non-discriminatory reason for terminating an employee") (citation omitted). It is undisputed that Plaintiff had performance issues throughout her employment.  Plaintiff testified that she had issues scheduling patients and working the scheduling program, using the telephones and relaying messages, communicating with co-workers and patients, and responding to meeting invites.  (Plaintiff Dep. at 42, 45, 75-77, 98 and 100).  Plaintiff also testified that, while it was important for UHPS to properly maintain their patient records, she could not operate Excel and refused to learn Excel, despite being requested

15

to do so on multiple occasions.  (Plaintiff Dep. at 15-16, 29-30, 35, 38-39, 44 and 97).   UHPS maintained detailed written documentation of Plaintiff's performance issues, demonstrating that her performance issues motivated its decision to terminate her. Plaintiff admitted that she understood that her poor performance evaluations and placement on PIPs placed her in jeopardy of termination.  (Plaintiff Dep. at 65 and 121).   Moreover, Plaintiff testified that her final performance evaluation in August of 2014 was "awful."  (Plaintiff Dep. at 65).   Simply put, Plaintiff could not meet the expectations of UHPS, which is reflected in her own testimony and UHPS' documentation.

Additionally, Plaintiff is unable to prove that her poor performance was not the reason for her termination, but rather pretext for unlawful disability discrimination.  Plaintiff brings forth no evidence whatsoever that disability discrimination played any role in UHPS' decision to terminate her.  While Plaintiff claims that she informed UHPS of her disability 30 days prior to her termination, she provides no evidence whatsoever that UHPS' decision to terminate her was based on her disability.  Instead, when asked how Plaintiff believed that her disability factored into UHPS decision to terminate her, she stated that she "***guesses***" that UHPS would view her as "not functional" due to her taking medication.   (Plaintiff Dep. at 86).  Such "guesses" and speculation do not sufficiently establish pretext.  *See Hodges v. City of Mulford*, 918 F.Supp.2d 721, 739 (S.D. Ohio 2013) (citing *Sutherland v. Mich. Dep't of Treasury*, 344 F.3d 603 (6th Cir. 2003) ("[u]nsupported speculation cannot form the basis for demonstrating pretext").  Moreover, Plaintiff testified that one of the secretaries that assumed her duties, Ms. Campbell, also suffered from the same disability as Plaintiff – depression – and was taking medication as a result. (Plaintiff Dep. at 87 and 104-105).

In short, Plaintiff has no evidence that proves UHPS' legitimate, non-discriminatory

reason for her termination was instead a mere pretext for disability discrimination.  Accordingly, Plaintiff's disability discrimination claims should be dismissed.

### C.  Plaintiff's Age Discrimination Claims Under the ADEA and R.C. § 4112 Fail as a Matter of Law.

Plaintiff alleges that UHPS wrongfully terminated her on the basis of her age in violation of the ADEA and the Ohio Revised Code.  (Compl. at ¶¶ 13-20 and 33-40).  Plaintiff's claims are without merit.

### 1.  Cannot Satisfy Her *Prima Facie* Case.

Plaintiff testified that no one at UHPS made any age-based comments towards her. (Plaintiff Dep. at 50 and 106).  Because there is no direct evidence of age discrimination, Plaintiff must prove her case by relying on circumstantial evidence. *See Hughey v. CVS Caremark Corp.*, 629 Fed. App'x 648, 650-651 (6th Cir. 2015) (holding that an employee bringing a claim under the ADEA without any direct evidence must, therefore, prove their case using circumstantial evidence); *see also Jett v. Am. Nat'l Red Cross*, 3 F. Supp. 3d 695, 702 (S.D. Ohio 2014).  In order for Plaintiff to satisfy her *prima facie* case using circumstantial evidence, she must prove that she: (1) was a member of a statutorily-protected class; (2) suffered an adverse employment action; (3) was qualified for the position; and (4) was replaced by a person who is not a member of the protected class.  *See Godfredson v. Hess & Clark*, *Inc.*, 173 F.3d 365, 371, 1999 U.S. App. LEXIS 6266, *10-11 (6th Cir. 1999).  Plaintiff cannot meet the third or fourth elements of her *prima facie* case.

Plaintiff was not qualified for her position because she was not meeting UHPS' legitimate expectations.  *See Godfredson*, 173 F.3d at 372 ("[i]n order to show that a plaintiff is qualified, [he] must prove that he was performing his job at a level which met his employer's legitimate expectations") (internal citations omitted).  As previously discussed herein, Plaintiff's

poor performance evaluations, multiple PIPs and, importantly, her own testimony all demonstrate that Plaintiff was performing unsatisfactorily.

Additionally, Plaintiff cannot establish the fourth prong of her *prima facie* case because, as already discussed herein, Plaintiff was not replaced, but rather, her job was eliminated and her work was subsumed by two other secretaries within Plaintiff's department. *See Godfredson*, 173 F.3d at 372.  Accordingly, Plaintiff cannot establish the fourth prong of her *prima face* case because she was not replaced after her termination.

Because Plaintiff was not qualified for her position or replaced after her separation, she cannot satisfy her *prima facie* case for age discrimination under the ADEA or R.C. § 4112.02.

### 2. If Plaintiff Could Establish A *Prima Facie* Case, Her Claim Still Fails Because She Cannot Prove That UHPS's Legitimate Non-Discriminatory Reason For Terminating Her Was A Pretext For Age Discrimination.

Assuming, *arguendo*, that Plaintiff is able to prove her *prima facie* case of age discrimination under Ohio and federal law – which she cannot – Plaintiff cannot prove that UHPS' legitimate non-discriminatory reason for terminating her – her poor performance – was unlawful pretext for discrimination.  *See Weatherby v. Fed. Express*, 454 Fed. App'x 480, 489 (6th Cir. 2012) (if the plaintiff is able to establish a *prima facie* case of discrimination under the ADEA, the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for its action, and if the employer meets this burden, the plaintiff is then required to show by a preponderance of the evidence that the employer's reasons were not legitimate, but merely pretext for discrimination).  In order to establish pretext, Plaintiff must prove that UHPS' decision to terminate her due to her poor performance: (1) had no basis in fact; (2) did not actually motivate the adverse action; or (3) was insufficient to motivate the adverse action. *Id.*

Plaintiff is unable to prove that her poor performance was not the reason for her

termination, but rather pretext for unlawful age discrimination.   As discussed above, it is undisputed that Plaintiff had performance issues, and that those performance issues provided UHPS with a sufficient reason to terminate Plaintiff.  *See Stockman v. Oakcrest Dental Ctr., P.C.*, 480 F.3d 791, 802, 2007 U.S. App. LEXIS 6076 (6th Cir. 2007) ("Poor performance is a legitimate non-discriminatory reason for terminating an employee.").   Additionally, UHPS' detailed written performance evaluations and PIPs demonstrate that Plaintiff's continuous performance issues actually motivated its decision to terminate her.   Simply put, Plaintiff could not meet the legitimate expectations of UHPS, which is reflected in her own testimony and UHPS' documentation.

Plaintiff also lacks any evidence showing that her age was the true reason for her termination.  First, UHPS hired Plaintiff for a full time position when she was 55 years-old and already a member of the protected age group. (Plaintiff Dep. at 49-50).   Second, Plaintiff's supervisor – who is also the decisionmaker in this case – is similarly in Plaintiff's protected class.   (*See* Plaintiff Dep. at 93; Conti Decl. at ¶¶ 2 and 11).   Third, Plaintiff cannot point to a single employee supervised by Ms. Conti that has similarly failed to improve their performance after multiple warnings and PIPs and was not discharged.  In fact, Plaintiff testified that she does not know of a single UHPS employee over the age of 60 that has been terminated by UHPS. (Plaintiff Dep. at 93).   Lastly, and importantly, Plaintiff testified that the two employees that overtook her position were both **over the age of 40**, with Ms. Campbell, according to Plaintiff, being about the same age as she – 66 or 67.  (Plaintiff Dep. at 91-92).

The only evidence Plaintiff contends support her claim for age discrimination come from individuals – two of which Plaintiff cannot identify – that had no involvement in Plaintiff's employment decisions. (Plaintiff Dep. at 89-91).  At best, these comments were stray remarks by

nondecisionmakers, and as such, do not demonstrate pretext. *See Smith v. Leggett Wire Co.*, 220 F.3d 752, 759 (6th Cir. 2000) (quoting *Bush v. Dictaphone Corp.*, 161 F.3d 363, 369 (6th Cir. 1998) ("[s]tatements made by nondecisionmakers…[can not] suffice to satisfy the plaintiff's burden… of demonstrating animus."). Moreover, the alleged conversation between the two unidentified individuals in the hallway that Plaintiff allegedly overheard is inadmissible hearsay and cannot be used to bolster her claims. *See Anderson v. McCarthy, Burgess & Wolff, Inc.*, No. 1:14-CV-617, 2015 U.S. Dist. LEXIS 5198, *13 (N.D. Ohio Jan. 15, 2015) (citing *Harrison v. McDonald's Corp.*, 411 F.Supp.2d 862 (S.D. Ohio 2005)) (hearsay statements of coworkers, which affiant allegedly overheard, were not admissible).[2]

Simply put, Plaintiff has no evidence that proves UHPS' legitimate, non-discriminatory reason for her termination was a mere pretext for age discrimination.  Accordingly, Plaintiff's age discrimination claims under both federal and state law should be dismissed.

**V.    CONCLUSION**

For each of the foregoing reasons, UHPS respectfully requests that summary judgment be granted in its favor and that Plaintiff's claims be dismissed in their entirety.

Respectfully submitted,

*/s/Liana R. Hollingsworth*
David A. Campbell (0066494)
Liana R. Hollingsworth (0085185)
VORYS, SATER, SEYMOUR AND PEASE LLP
200 Public Square, Suite 1400
Cleveland, Ohio 44114
Telephone: (216) 479-6100
Fax: (216) 479-6060
Email: dacampbell@vorys.com;
        lrhollingsworth@vorys.com
*Attorneys for Defendant University Hospitals Physician Services, Inc.*

---

[2] Also, even if the comments were admissible, the comments could have been made in reference to mandatory retirement for doctors – not age discrimination.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing was served by both regular U.S. mail, postage prepaid,

and electronically, this 8th day of August, 2016, upon:

Mark E. Porter
Law Office of Mark E. Porter, LLC
6480 Rockside Woods Boulevard South
Suite 300
Cleveland, Ohio 44131-2222


*/s/Liana R. Hollingsworth*
Liana R. Hollingsworth (0085185)
Vorys, Sater, Seymour and Pease LLP
200 Public Square, Suite 1400
Cleveland, Ohio 44114
(216) 479-6100
(216) 479-6060 fax
lrhollingsworth@vorys.com

*One of the Attorneys for Defendant*

21