## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

KATHRYN FORTUNATO,                    CASE NO:  1:15-cv-1940 PAG

       Plaintiff,                     JUDGE PATRICIA A. GAUGHAN

vs.

UNIVERSITY HOSPITALS PHYSICIAN        **PLAINTIFF'S BRIEF IN OPPOSITION**
SERVICES, INC.,                       **TO DEFENDANT'S MOTION FOR**
                                      **SUMMARY JUDGMENT**
       Defendant.

Plaintiff Kathryn Fortuanto ("Plaintiff"), by and through undersigned counsel and pursuant to Fed.R.Civ.P. 56, hereby submits her *Brief In Opposition* to the *Motion For Summary Judgment* ("Motion") filed by Defendant University Hospitals Physician Services, Inc. ("Defendant"). Defendant's Motion should be denied because the evidence adduced in this matter demonstrates 1) Defendant is not entitled to judgment as a matter of law, 2) there are issues of genuine material fact requiring resolution by trail, and 3) a reasonable jury could easily find in Plaintiff's favor on her Federal and state law claims for both age and handicap discrimination. The Motion's denial is warranted specifically because the evidence demonstrates 1) Plaintiff has established a prima facie case for age and handicap discrimination through direct evidence, and 2) Defendant's proffered reasons for Plaintiff's termination were mere pretexts for discrimination.

                                  Respectfully submitted,

/s/  *Mark E. Porter*
Mark E. Porter (0072952)
Law Office of Mark E. Porter, LLC
6480 Rockside Woods Boulevard South
Suite 360
Cleveland, Ohio 44131-2222
Phone:  (216) 402-2157
E-mail:  mp@mporterlaw.com
*Attorney for Plaintiff*

# TABLE OF CONTENTS

STATEMENT OF ADHERENCE TO LOCAL RULE 7.1…………………………………….......1

I.      STATEMENT OF THE ISSUES TO BE DECIDED………………………………………1

II.     SUMMARY OF THE ARGUMENT…………………………………………………………1

III.    FACTS………………………………………………………………………………….......3

IV.     LAW & ARGUMENT

        A.      Standard of Review………………………………………………………………...12

        B.      Plaintiff's Federal Age Discrimination Claim Under 29 U.S.C. § 621 *et seq*…..13

        C.      Plaintiff's State Age Discrimination Claim Under Ohio R.C. 4112.14…………..15

        D.      Plaintiff's Federal Disability Discrimination Claim Under 42 U.S.C. §12101..16

        E.      Plaintiff's State Handicap Discrimination Claim under R.C. 4112.02………..19

V.      CONCLUSION……………………………………………………………………………20

## TABLE OF AUTHORITIES

Cases

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)……………………………………….…12

*Booker v. Brown & Williamson Tobacco Corp.*, 879 F.2d 1304 (6th Cir. 1989)………………12

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)………………………………………………….12

*Chattman v. Toho Tenax Am., Inc.*, 686 F.3d 339 (6th Cir.2012)……………………………14

*Cooley v. Carmike Cinemas, Inc.*, 25 F.3d 1325 (6th Cir. 1994)……………………………14

*Gross v. FBL Fin. Services, Inc.*, 557 U.S. 167 (2009)…………………………………………13

*Geiger v. Tower Auto.*, 579 F.3d 614 (6th Cir. 2009)…………………………………………14

*Harrison v. McDonald's Corp.*, 411 F.Supp.2d 862 (S.D.Ohio 2005)…………………………15

*Kowach v. Ohio Presbytyrian Ret. Servs.*, 2010-Ohio-4428 (11th Dist.)………………………16

*Mauzy v. Kelly Servs.*, 75 Ohio St.3d 578 (1996)……………………………………….…16

*McCrory v. Kraft Food Ingredients*, 98 F.3d 1342, 1996 WL 571146 (6th Cir.1996)…………17

*Monette v Electronic Data Sys. Corp.*, 90 F.3d 1173, 1186 (6th Cir.1996)……………………16

*Shaver v. Wolske & Blue*, 138 Ohio App.3d 653 (10th Dist.2000)……………………………19

*Smith v Henderson*, 376 F.3d 529, 535 (6th Cir.2004)…………………………………………17

*Talley v. Bravo Pitino Restaurant, Ltd.*, 61 F.3d 1241, 1249 (6th Cir.1995)…………………15

*Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564 (6th Cir.2003)…………………………14

Statutes

29 U.S.C. § 621……………………………………………………………………....…1, 13

29 U.S.C. § 623(a)……………………………………………………………………….13

42 U.S.C. §12101…………………………………………………………………....…1, 16

42 U.S.C. § 12102(2)……………………………………………………………………1, 17

R.C. 4112.02……………………………………………………………………….....…1, 19

R.C. 4112.14…………………………………………………………………………1, 15

Rules

Fed.R.Civ.P. 56(C)…………………………………………………………………12

Fed.R.Evid. 801(d)(2)……………………………………………………………15

## STATEMENT OF ADHERENCE TO LOCAL RULE 7.1

This Brief In Opposition adheres to the page limitations set forth in Local Rule 7.1 of the United States District Court for the Northern District of Ohio. This matter is assigned to the standard case management track.

## I.      STATEMENT OF THE ISSUES TO BE DECIDED.

1.      Does the evidence adduced in this matter demonstrate that Defendant terminated Plaintiff on the basis of her age in violation of 29 U.S.C § 621 *et seq*?

2.      Does the evidence adduced in this matter demonstrate that Defendant terminated Plaintiff on the basis of her age in violation of O.R.C. 4112.14?

3.      Does the evidence adduced in this matter demonstrate that Defendant terminated Plaintiff on the basis of her disability in violation of 42 U.S.C § 12101?

4.      Does the evidence adduced in this matter demonstrate that Defendant terminated Plaintiff on the basis of her handicap in violation of O.R.C. 4112.02?

## II.     SUMMARY OF THE ARGUMENT.

The evidence in the record demonstrates that Plaintiff's employment began in May, 2001 as a secretary in Defendant's Ophthalmology Department at the rate of $13.00/hour. In the process of securing this position, Plaintiff had submitted a resume showing extensive experience as a medical secretary and transcriptionist. At the time of her hiring, Plaintiff was approaching her 56th birthday. On or about April 10, 2003, Defendant notified that her position had been eliminated and that she could laid-off rather than terminated. Plaintiff chose to be laid off, which allowed her to be rapidly rehired as an Ophthalmology Department file clerk in July, 2003 at $10.50/hour.

In January, 2008, Plaintiff transferred to the Endocrinology Department, where she assumed the duties of a medical secretary paid at the initial rate of $13.25/hour.  In

September, 2008, Plaintiff provided Defendant a doctor's note stating in express terms that she was being treated for an anxiety disorder. Over the course of her career, Plaintiff received periodic pay increases and generally favorable performance reviews, despite receiving "corrective action" notices and being placed on performance improvement plans at certain points. Plaintiff also received at least one award for "going above and beyond" the call of duty.

In 2013, however, Deb Conti became Plaintiff's supervisor. From that point on, Defendant, through Conti and other persons in the Endocrinology Department, sought Plaintiff's termination by issuing her unwarranted negative performance evaluations and placing her on two sequential Performance Improvement Plans. Plaintiff, suffering from depression and anxiety for which she was taking medication, informed Defendant that she needed more time and training to become proficient in the Microsoft Excel computer program in connection with her job. Defendant failed to accommodate her.

In the summer of 2014, Plaintiff gave testimony in connection with a lawsuit filed by Marsha Kelly, a former co-worker in the same department, whose claims included discrimination on the basis of a disability. As a result of her testimony, which was favorable to Ms. Kelly, Plaintiff has a conversation with Bart Bixenstine, Esq., Defendant's attorney in that matter. He told her expressly, **"You're next in line."** This statement constitutes direct evidence of unlawful discrimination on the basis of disability and/or age. Thereafter, Defendant fired Plaintiff on October 29, 2014, claiming

the termination warranted because Plaintiff had failed to improve her performance. Not coincidentally, Plaintiff was almost 69 years old when she found herself suddenly unemployed.

## III. <u>FACTS.</u>

The evidence adduced in this matter reveals that Plaintiff applied for employment with Defendant in early 2001. Her application included her resume, which indicated extensive experience as a medical secretary and transcriptionist. *See Affidavit of Kathryn Fortunato*, attached hereto as Exhibit 1, Exhibit A thereto, at 1.  Defendant hired Plaintiff on or about May 21, 2001 as a Doctor's Secretary I in the Ophthalmology Department. *Id.* at Exhibit B thereto, at 1.  Her initial rate of pay was set at $13.00/hour. *Id*. Thereafter, Plaintiff entered into a 90-day performance process, during which she received a Performance Improvement Plan that identified several areas for improvement. *Id.* at Exhibit C, at 1-2. Subsequently, on September 21, 2001, Plaintiff received her 90-day evaluation that noted, *inter alia*, that she was doing "a nice job" working with the file room, as well as demonstrating "very good accuracy with transcription." *Id.* at Exhibit D, at 1-2.  At the end of the 2001 calendar year, Plaintiff received an evaluation indicating that she met expectations in three areas, but was below expectations in three as well. *Id.* at Exhibit E. Plaintiff's successful completion of her first six months' employment is reflected in the fact that she received a 1.5% raise on or about January 6, 2002, increasing he pay to $13.12/hour. *Id.* at Exhibit F.

Shortly thereafter, on January 29, 2002, Plaintiff received a Corrective Action letter that addressed certain areas requiring improvement, though it also noted she was doing a very good job transcribing tapes. *Id*. at Exhibit G, at 1-2. On February 19, 2002, Plaintiff received a two-week follow-up from her supervisor that noted some progress but also that Plaintiff needed to improve in other areas. *Id.* at Exhibit H.

Plaintiff received her 2002 performance review on or about January 13, 2003. Id. at Exhibit I. Plaintiff's evaluation indicates a rating of 1.25 (on a 0-3 scale), that placed her in the category of "meeting minimum standards, but not performing at a level that is satisfactory." *Id.* at 2. Nonetheless, despite evaluations that might be considered less than stellar, Plaintiff's employment continued until she was notified on or about April 10, 2003 that due to "financial constraints," her position was being eliminated as of April 25, 2003. *Id.* at Exhibit J. The letter indicates that Plaintiff could choose between two options, lay-off status or termination with two-weeks' severance pay. *Id.* Plaintiff elected to be laid off, which permitted her to apply for other positions within Defendant's workforce. *Id.* at Exhibit K. Despite the date set forth in the notice, Defendant asked her to work an additional week before being laid off. *Id.* at Exhibit L.

Subsequently, Plaintiff applied for an open file clerk position within the Ophthalmology Department. Dr. Richard Gans, M.D., approved her hiring and directed that she be offered $10.50/hour, an amount significantly higher than that paid to other file clerks. *Id.* at Exhibit M. Plaintiff resumed her employment with Defendant, this time

as a file clerk, on July 21, 2003. *Id.* at Exhibit N. Plaintiff's employment as a medical records file clerk continued fro this point on. In her 2003 evaluation, dated November 11, 2003, Plaintiff received a 2.48 rating (out of 3.0). *Id.* at Exhibit O, at 1. This rating demonstrates that Plaintiff had substantially improved her performance from the previous two years. The rating meant that Plaintiff's work was "completely satisfactory" to her superiors in Defendant's Ophthalmology Department. *Id.* at 2. Given her significant improvement and near exemplary performance, it is therefore no surprise that Defendant issued Plaintiff an "Encore Award" dated October 28, 2004. *Id.* at Exhibit P. The Award commends Plaintiff "For going above and beyond." *Id.*[1]

Thereafter, Plaintiff received her 2004 performance evaluation dated March 3, 2005. *Id.* at Exhibit Q. She received a 2.35 overall rating, indicating that her performance of her duties satisfied her superiors completely. *Id.* at 1. Dr. Suhee Shuang, M.D., as her department head, signed the evaluation, which noted, "Kathryn is a dedicated worker. She is diligent in completing her tasks. She is courteous both in person and one the phone. Kathryn is always willing to go the extra mile to get the job done." *Id.* at 4. The evaluation also stated, "Kathryn works so hard sometimes that she doesn't listen as well as she could… she could work a little on her listening skills." *Id.*    The following year, Plaintiff received her 2005 evaluation on or about February 17, 206. *Id.* at Exhibit R.

---

[1]  A document conspicuous by its absence from Defendant's production in response to Plaintiff's document requests.

During this period, her performance had improved to the point where she was awarded a 2.50 "completely satisfactory" rating. *Id*. at 6.[2]

In early 2008, Defendant transferred Plaintiff to the Endocrinology Department and into the position of a Medical Secretary I, effective January 20, 2008. Her pay rate increased from $11.80/hour to $13.25/hour. *Id*. at 2.  In her first annual evaluation as a medical secretary, dated May 5, 2008, Lila Robinson, her supervisor, found that Plaintiff had met all competencies," and "regularly" met the required criteria. *Id*. at Exhibit S, 2, 3. Robinson also wrote, "Kathryn- We're so grateful you came to us & have worked so hard to learn our business practices. Keep it up!" *Id*. at 3. Plaintiff's performance is all the more noteworthy because she had been diagnosed as suffering from an anxiety disorder by her physician, Baha Arafah, M.D., a doctor with University Hospitals Medical Group, Inc. *Id.* at Exhibit U. Plaintiff testified at her deposition that she had notified her supervisor of her condition. *See Fortunato Deposition Transcript*, at 24.[3]

Plaintiff's 2008 review, dated February 25, 2009, rated her overall performance as "valued" and suggested two areas in which Plaintiff could improve. *Id.* at Exhibit V at 3. The review also noted that Defendant valued Plaintiff's pleasant demeanor and willingness to learn. *Id.*  In her next annual review, for 2009 and dated March 10, 2010, David Brooks, her supervisor, rated Plaintiff's performance as "consistent." *Id*. at

---

[2] The first page of the 2005 evaluation and the 2006 and 2007 evaluations are absent from the record.

[3] Defendant filed Plaintiff's deposition transcript as an attachment to its Motion.

Exhibit W. He also stated, "Kathryn is a hard worker and is looking for ways to improve her efficiency and communication skills. Kathryn is dedicated." *Id*. at 4. In 2010, Plaintiff received two "Corrective Action" forms describing incidents involving patient lab results and updating open and closed dates for a doctor's clinics. *Id*. at Exhibit X, at 1, 3. Plaintiff also received a Corrective Action notice on February 7, 2011, arising from an issue with clinics being marked as open or closed in the records. *Id*. at Exhibit Y, at 1. In her comments to the notice, Plaintiff wrote that there had been a significant lack of training with respect to this issue, and also noted, "I think my anxiety level and fear of making errors due to our stressful environment did not help this situation[.]" *Id*. at 2. Given the Corrective Action notices issued in 2010 and 2011 it is unsurprising that Plaintiff's 2010 evaluation, dated March 23, 2011, was less than favorable. *Id*. at Exhibit Z. Her performance was recorded as "inconsistent," though her supervisor noted Plaintiff is "honest, works hard, and is able to carry out activities which are clearly spelled out… Kathryn accepts feedback and works hard at changing her behaviors." *Id*. at 3.

In contrast to the unfavorable 2010 rating, Plaintiff's 2011 performance evaluation evidences a significant improvement. *Id*. at Exhibit AA. Dated January 25, 2012, and signed by Radhika Easwaran, her manager, the 2011 review rated Plaintiff's performance as "Consistently Meets Expectations." *Id*. at 4.  In her 2012 review, dated January 31, 2013, Wendy Lachowski, Plaintiff's manager,  rated her overall performance

7

"Frequently Meets Expectations," and noted as well, "Kathryn most often is meeting expectations of the division." *Id*. at Exhibit BB, at 4. She continued, "She is very dependable, honest and hard-working. She is able to complete tasks that are clearly defined for her." *Id*. Lachowski noted, though, the Plaintiff needed to work on her communications skills. *Id*.

Later in 2013, Deb Conti replaced Lachowski as Plaintiff's supervisor. On or about December 3, 2013, Conti placed Plaintiff on a Performance Improvement Plan ("PIP"), an action by Defendant that had not occurred since 2001. *Id*. at Exhibit CC. The PIP indicates that Conti viewed Plaintiff's performance as deficient in certain communications areas, as well as in references to fellow employees. *Id*. at 2. Conti also asserted that Plaintiff was not using Plaintiff's Athena computer based system. *Id*. Plaintiff, in her handwritten comments, disagreed with the assertions set forth in the PIP. *Id.*

More importantly for the purposes of this litigation, Plaintiff wrote on the PIP's last page, "Any prior dissatisfaction could have been related to the fact that I had a medical issue not aware of until noted by PEP & treated as an inpatient." *Id*. at 3. At her deposition, Plaintiff testified that she had been diagnosed as suffering from depression, which affected her job performance. *See Fortunato Deposition Transcript*, at 99. She asked Conti to stop yelling at her because of her medication. *Id.*

Significantly, the 2013 PIP called for follow-ups at intervals of 15, 30, 45, and 60 days after its issuance. *See Exhibit CC*, at 1. The record is devoid of any evidence to show that Conti took such action, leading to the conclusion that follow-ups were not warranted because Plaintiff's improved performance rendered such follow-ups unnecessary.

Eight months later, on August 19, 2014, Conti issued Plaintiff another PIP, identifying a number of areas in which she felt Plaintiff needed to improve her performance. *See Exhibit 1*, Exhibit DD thereto. A number of the issues identified were the same as in the 2013 PIP. Notably absent, however, are any references to difficulties with the Athena system or co-worker issues. *Id*. at 1-3. Plaintiff, in her handwritten comments to the PIP, stated, "I would think that in view of all the difficulties & stress we have undergone in this Dep[artment] & legal problems, change in staff management that you would have a little more understanding than to place me as inefficient or undesirable[.]" *Id*. at 4. This 2014 PIP, like the 2013 PIP, set forth the same 15, 30, 45 and 60 follow-up meetings. *Id*. at 3. The record is devoid of any evidence that such follow-up meetings took place. Indeed, the document shows while it is dated August 19, 2014, Plaintiff did not receive and sign it until September 3, 2014.

On the same day as the issuance of the 2014 PIP, Conti also presented Plaintiff with a Performance Evaluation that purported to encompass calendar year 2013. *See Exhibit 1*, Exhibit EE thereto. The Evaluation, dated August 19, 2014, can only be

9

described as very negative and includes the overall evaluation "Does Not Meet Expectations." *Id.* at 6. In her written comments attached to the Evaluation and dated August 21, 2014, Plaintiff wrote, in pertinent part:

> I have never said no to any requests, however last year my work was turned over to Antoinette because they felt there was a need to make a change which shortly afterwards put me in the hospital with severe anemia and a low hemoglobin which required transfusions. I could not understand why I was not functioning; this has since been solved and is okay.

*Id.* at 12.

On or about October 30, 2014, and without having held the follow-up meetings set forth in the 2014 PIP, Defendant terminated Plaintiff's employment. *Id.* at Exhibit FF. The document indicates Defendant took this action because Plaintiff had not improved her performance. *Id.* at 1. Plaintiff, in her handwritten comments to the termination notice stated expressly that she believed the termination due to 1) a deposition she had recently given in the lawsuit filed by Marsha Kelly against Defendant, 2) her disability arising from her depression "recently confirmed by Dr. Acheson,", and 3) her "age of 67." *Id.* at 2.

The evidence shows that Kelly had filed a lawsuit against, *inter alia*, David Brooks, her and Plaintiff's supervisor, and Defendant on March 6, 2013, which Defendant subsequently removed to this very Court on federal question grounds. *Id.* at Exhibit GG. Kelly alleged she had been discriminated against on the basis of her gender, and subjected to verbal, mental and physical harassment. Id. at ¶ 19. She also claimed

that she had been subjected to unwarranted discipline or disproportionately harsh disciplinary actions. In Count III of her Complaint, Kelly expressly alleged she had been discriminated against on the basis of her disability. *Id*. at ¶ 44.  Plaintiff testified at her deposition that she had been deposed in 2014 as a witness in connection with the Kelly lawsuit, and rendered testimony favorable to Kelly. *See Fortunato Deposition Transcript*, at 113. Plaintiff also testified that following her deposition, she had a conversation with Barton Bixenstine, Defendant's attorney in connection with the Kelly suit. Plaintiff testified at her deposition in this matter that she told Bixenstine that she was being harassed. Bixenstine told Plaintiff that she was "next on the list." *Id*. at 108, 116-117.

The evidence adduced in this matter, as set forth supra, demonstrates that Plaintiff had a 13 year career in Defendant's employ, with the last five years as a Doctor's Secretary I. The evidence also shows that she was qualified and competent to do the job. The record evidence also shows that Plaintiff suffered from one or more medical conditions constituting a disability under law that affected her ability to learn new practices. Defendant knew of Plaintiff's disability, but fired her instead of accommodating her expressed need for more time and training to perform her duties. Further, the record contains direct evidence of Defendant's discrimination, in the form of Bixenstine's comment to Plaintiff in 2014. Therefore, the evidence in this matter establishes a prima facie case of both age and disability discrimination in violation of Federal and Ohio law. Moreover, the evidence creates a question of fact as to whether

Plaintiff's purported poor performance, Defendant's stated reason for Plaintiff's termination, was mere pretext.

## IV.    LAW & ARGUMENT.

A.    The Summary Judgment Standard Under Fed.R.Civ.P. 56.

Federal Rule of Civil Procedure 56(C) provides, in pertinent part, that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(C). In reviewing a summary judgment pursuant to the Federal Rules of Civil Procedure, the court may only enter summary judgment if it finds the moving party has established 1) entitlement to judgment as a matter of law, 2) the absence of any genuine issues of material fact requiring resolution by trial, and 3) that a reasonable jury, viewing the evidence in the light most favorable to the non-moving party, can come to but one conclusion, and that conclusion is in favor of the moving party and adverse to the non-moving party. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Nat'l. Enters, Inc. v. Smith*, 114 F.3d 561, 563 (6th Cir.1997).

The fundamental inquiry is whether the evidence adduced in the matter presents a sufficient disagreement to require submission to a jury or whether it is so one-sided as that one party must prevail as a matter of law.  *See Booker v. Brown & Williamson Tobacco Corp.*, 879 F.2d 1304, 1310 (6th Cir. 1989). The plaintiff, of course, bears the ultimate burden of proof in connection with the claims alleged. *See Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242 (1986). In the matter at bar, Defendant has moved for summary judgment arguing 1) Plaintiff has failed to establish a *prima facie* case for either age discrimination or discrimination on the basis of a disability or handicap under federal of Ohio law, and 2) even if Plaintiff has established a prima facie case for unlawful discrimination, Defendant has proffered a legitimate, non-discriminatory reason, specifically, poor performance, for Plaintiff's termination. *See Defendant's Motion*, at 13-20.

Inaccurate as to the law governing this case and the facts adduced in the matter, Defendant's Motion should be denied. Denial is warranted, and this matter should proceed to a jury trial, because 1) the record contains direct evidence of discrimination sufficient for Plaintiff to establish her *prima facie* case for both age and disability/handicap discrimination under both Federal and Ohio law, and 2) the evidence adduced in this matter demonstrates a genuine issue of material fact exists as to whether or not Defendant's stated reason for terminating Plaintiff was mere pretext.

B.      Plaintiff's Federal Age Discrimination Claim under 29 U.S.C. § 621 *et seq.*

The Age Discrimination In Employment Act ("ADEA"), set forth in 29 U.S.C. § 621 *et seq.*, prohibits an employer from discriminating against an employee "because of an individual's age." *29 U.S.C. § 623(a)*. In order to establish a *prima facie* case for age discrimination under the statute, Plaintiff need only establish 1) that she was over 40 years of age, and 2) suffered an adverse employment decision as a result of her age. *See Gross v. FBL Fin. Services, Inc.*, 557 U.S. 167, 177 (2009). In *Gross,* the U.S. Supreme Court held expressly that the burden shifting framework pertinent to Title VII cases and set

13

forth in *McDonell Douglas Corp. v. Green*, 411 U.S. 792, 802-803 (1973), does not apply in ADEA cases. The Court further stated that the evidence establishing the claim may be direct or circumstantial. In applying *Gross*, the U.S. Sixth Circuit has held, "'Direct evidence of discrimination is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions.'" *Geiger v. Tower Auto.*, 579 F.3d 614, 620 (6th Cir. 2009)(quoting *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003) (en banc)). When examining statements allegedly showing employer bias on the basis of age, courts should consider "whether the comments were made by a decision maker or by an agent within the scope of his employment; whether they were related to the decision-making process; whether they were more than merely vague, ambiguous, or isolated remarks; and whether they were proximate in time" to the challenged action. *Cooley v. Carmike Cinemas, Inc.*, 25 F.3d 1325, 1330 (6th Cir. 1994). Where a plaintiff has presented direct evidence of discrimination, "The plaintiff's case-in-chief is met, and the burden shifts to the employer to prove by a preponderance of the evidence that it would have made the same decision absent the impermissible motive." *Chattman v. Toho Tenax Am., Inc.*, 686 F.3d 339, 346–47 (6th Cir.2012) (internal quotation marks and citation omitted).

In the matter at bar, there is direct evidence of discrimination on the basis of age. Specifically, Plaintiff testified as to her conversation with Bixenstine following the deposition she gave in the Kelly case. *See Fortunato Trans*cript, at 108, 116-117.

Bixenstine stated to Plaintiff that she "was next on the list," obviously meaning Plaintiff's termination was imminent. *Id.* Kelly, it will be remembered, had asserted a number of discrimination claims. Plaintiff, as noted, was 68 years old at the time of her deposition in the Kelly case and her termination. There can be no doubt that Bixenstine, as an attorney for Defendant, was acting within the scope of his employment and agency relationship with Defendant in communicating with Plaintiff. Moreover, there can also be no doubt that Bixenstine's statement is admissible against Defendant as an admission by an agent of a party opponent pursuant to Fed.R.Evid. 801(d)(2). *See Harrison v. McDonald's Corp.*, 411 F.Supp.2d 862, 867 (S.D.Ohio 2005); accord, *Talley v. Bravo Pitino Restaurant, Ltd.*, 61 F.3d 1241, 1249 (6th Cir.1995). Therefore, Plaintiff has established through direct evidence a *prima facie* case for discrimination. Defendant has not argued that it would have fired Plaintiff anyway, arguing instead she could not make a prima facie case. Moreover, Defendant's reliance on the burden shifting framework for cases involving circumstantial evidence in connection with an ADEA claim is misplaced. Therefore, as Defendant has failed to demonstrate entitlement to judgment as a matter of law, its Motion should be denied.

C.      Plaintiff's State Age Discrimination Claim Under Ohio R.C. 4112.14.

Ohio law, like its Federal counterpart, bars discrimination in employment on the basis of age. *See R.C. 4112.14.* The Ohio Supreme Court has held, "[A] plaintiff may establish a prima facie case of age discrimination directly by presenting evidence, *of any*

*nature*, to show that the employer more likely than not was motivated by discriminatory intent." *Mauzy v. Kelly Servs.* (1996), 75 Ohio St.3d 578, paragraph one of syllabus (emphasis added); *acccord*, Kowach v. Ohio Presbytyrian Ret. Servs., 2010-Ohio-4428 (11th Dis.). Where such direct evidence is contained in the record, the burden shifting framework set forth in *McDonnell Douglas* is inapplicable. *Id.*

In this matter, Bixenstine's statement, so close in time to Plaintiff's termination, serves as direct evidence of discrimination. Defendant's effort to place this claim within the *McDonnell Douglas* rubric fails as a matter of law. Defendant's Motion does not attempt to claim that Plaintiff would have been fired regardless of any discriminatory intent. *See Defendant's Motion*, at 9. Even if Defendant had made such a claim, it would fail because a reasonable jury, viewing Plaintiff's 13 year work record, would conclude that Plaintiff was a good employee that had been fired because she was older than 40.

D.    Plaintiff's Federal Disability Discrimination Claim Under 42 U.S.C. §12101.

In order to establish a *prima facie* claim under the American With Disabilities Act ("ADA"), a plaintiff must show that 1) that she was disabled as defined by Federal law, 2) she is otherwise qualified for the position, with or without reasonable accommodation, 3) she suffered an adverse employment decision, 4) the employer knew or had reason to know of her disability, and 5) she was replaced or that her position remained open while the employer looked for other applicants. *See Monette v Electronic Data Sys. Corp.*, 90 F.3d 1173, 1186 (6th Cir.1996). If the plaintiff establishes her case, the burden shifts to the

employer to provide a non-discriminatory reason for the firing. If the employer satisfies this burden, the employee must set forth specific facts demonstrating pretext. *Id.* at 1186-7.

Federal law defines a "disability" as including, *inter alia,* a physical or mental impairment that substantially limits one or more major life activities, or a record of such impairment. *See 42 U.S.C. § 12102(2).* Federal law recognized both depression and anxiety disorders as disabilities under the ADA. *See McCrory v. Kraft Food Ingredients,* 98 F.3d 1342, 1347, 1996 WL 571146, at *5 (6th Cir.1996). Defendant, unsurprisingly, claims Plaintiff cannot meet her initial burden, or, in the alternative, that the reason for her firing was not pre-textual. *See Defendant's Motion,* at 9-15. Specifically, Defendant claims Plaintiff was not disabled, not qualified for the job, and/or did not request an accommodation. *Id.* A request for accommodation can be inferred from circumstances. *See Smith v Henderson, 376 F.3d 529, 535 (6th Cir.2004).*

The evidence in this matter demonstrates Plaintiff has met her initial burden. The evidence shows conclusively that Plaintiff informed Defendant that she was being treated for an anxiety disorder by providing a 2008 note from her doctor to that effect. *See Exhibit U.* Plaintiff also testified at her deposition that she had been taking medication for depression for the last 5-10 years. *See Fortunato Dep. Transcript,* at 8. She also testified that Defendant's employees knew of her disability. *Id.* at 86-87, 99. She was, after all, receiving medical services by physicians employed by Defendant. Fortunately, for Plaintiff, the medications worked and she could do her job from the time she became a doctor's

secretary. In terms of learning new computer programs, her medical condition impacted her ability to learn, but Plaintiff testified that she could become proficient in new programs, such as Excel, if given the proper amount of training. *Id.* at 115. She also testified that she bought a training program on her own to learn Excel because the training she had received was inadequate and Conti was threatening her about it. *Id.* at 17-18, 38. Plaintiff asked for help to learn the new systems, but was refused. *Id.* at 39-40. These were indeed requests for accommodations, specifically, more time and training. She also observed young women coming to the office to interview for secretarial positions a week after her termination. *Id.* at 88-89. This testimony squarely contradicts Conti's claim that Plaintiff's position was eliminated. *See Defendant's Motion*, Exhibit 3, at ¶13. This evidence establishes Plaintiff's burden to establish a prima facie case.

As for Defendant's proffered rationale for termination, specifically that Plaintiff was a poor performer, the record demonstrates otherwise. From 2003 to until December, 2013, Plaintiff had not been placed on a PIP. Moreover, her evaluations until Conti's appearance were generally good. Pretext may also be found in that fact that Conti gave Plaintiff both her 2013 evaluation and 2014 PIP at the same time, but then failed to hold any of the required follow-up meetings. In addition, Bixenstine's statement to Plaintiff that she was the "next on the list" to be fired is also evidence of pretext. *Id.* at 117. After all, the common claim between Kelly's case and Plaintiff's is discrimination on the basis of disability. Therefore, Defendant's Motion should be denied.

E.    Plaintiff's State Handicap Discrimination Claim under R.C. 4112.02.

Like its Federal counterpart, Ohio law bars discrimination on the basis of a handicap. *See R.C. 4112.02(A)*. In order to establish a prima facie case of handicap discrimination, a plaintiff must establish 1) she was handicapped, 2) she suffered an adverse employment decision at lest in part because of her handicap, and 3) though handicapped, she could safely and substantially perform the essential functions of the job. *See Hood v Diamond Products*, 74 Ohio St.3d 298 (1996), syllabus. The Ohio statute defining "handicap" includes medical conditions that impact a person's ability to learn. *See R.C. 4112.01(A)(13)*. Ohio courts have recognized that depression and/or anxiety are handicaps as defined by Ohio law. See, e.g., *Shaver v. Wolske & Blue*, 138 Ohio App.3d 653 (10th Dist.2000). The evidence adduced in this matter, as set forth *supra*, shows Plaintiff' anxiety and depression impacted her ability to learn new computer programs, thereby qualifying her as handicapped under Ohio law. She was fired from her job because, as Conti claims in her affidavit, because she was not learning new programs as quickly as Defendant desired. *See Defendant's Motion*, Exhibit 3, at ¶ 9. With adequate time and training, the evidence shows Plaintiff would have been able to become proficient in this area. *See Fortunato Deposition Transcript*, at 115. Defendant's proffered reason for Plaintiff's termination was, therefore, mere pretext.

V.    **CONCLUSION**.

The evidence adduced in this matter demonstrates that Plaintiff Kathryn Fortunato has established a *prima facie* case for unlawful discrimination on the basis of her age and disability. Plaintiff has also produced evidence to demonstrate that

Defendant's stated reason for her termination was mere pretext. Indeed, direct evidence of discrimination, in the form of a statement made to Plaintiff by one of Defendant's attorneys, that Plaintiff was "next on the list" warrants the denial of Defendant's Motion because 1) Defendant is not entitled to judgment as a matter of law, 2) there are genuine issues of material fact requiring resolution by trial, and 3) a reasonable jury could easily find in Plaintiff's favor.

Respectfully submitted,

/s/ Mark E. Porter
Mark E. Porter (0072952)
Law Office of Mark E. Porter, LLC
6480 Rockside Woods Boulevard South
Suite 300
Independence, Ohio 44131-2222
E-mail: mp@mporterlaw.com
Phone:  (216) 402-2157

Attorney for Plaintiff Kathryn Fortunato

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 7th day of September, 2016, the foregoing *Plaintiff's Brief In Opposition To Defendant's Motion For Summary Judgment* was filed via the Court's CM/ECF system, which will send a notice of electronic filing to all registered parties.  All parties can access this filing via the Court's CM/ECF system.

*/s/ Mark E. Porter*
Mark E. Porter (0072952)
Attorney for Plaintiff Kathryn Fortunato