UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| KATHRYN FORTUNATO, | ) CASE NO. 1:15-cv-1940 PAG |
| | ) |
| Plaintiff, | ) JUDGE PATRICIA A. GAUGHAN |
| | ) |
| vs. | ) |
| | ) |
| UNIVERSITY HOSPITALS PHYSICIAN | ) |
| SERVICES, INC., | ) |
| | ) |
| Defendant. | |

## DECLARATION OF DEBORAH CONTI

I, Deborah Conti, being first duly cautioned and sworn, and being older than age eighteen and competent to testify about the matters contained herein, hereby declare and state as follows upon personal knowledge or information:

1.    I, Deborah Conti, am employed by Defendant University Hospitals Physician Services, Inc. ("UHPS") as Manager of Patient Access for the Department of Medicine. In that capacity, I have personal knowledge of the matters to which I testify herein.

2.    I am currently 50 years old.

3.    I began supervising Plaintiff Kathryn Fortunato ("Plaintiff" or "Ms. Fortunato") who worked for UHPS as a Doctor's Secretary in the spring of 2013, and remained Plaintiff's supervisor until her separation in October of 2014.

4.    Plaintiff worked with two other Doctor's Secretaries in her department: Carol Campbell and Antoinette Buckner. Mses. Campbell and Buckner are still employed by Defendant and both are over 40 years old..

1

5.   As a Doctor's Secretary, Plaintiff's responsibilities included, but were not limited to, answering phones, coordinating physicians' schedules, including patient appointments, research time and clinicals, processing expenses, and maintaining patient charts.

6.   Ms. Fortunato exhibited multiple performance deficiencies throughout her employment.  For example, Ms. Fortunato had issues with scheduling patients, maintaining patient charts and records, working the telephones, relaying messages, using the patient scheduling software, communicating with patients, and turning her timecard in on time.  I verbally counseled Plaintiff on her performance deficiencies on numerous occasions, but her performance did not improve.

7.   In response to a push by the federal government to move towards electronic records keeping, UHPS transitioned to a new billing system and the electronic storing of medical charts in May of 2013. As part of this transition, hard copies of patient files were placed in boxes and moved to off-site storage.  In order to keep track of the paper files, information regarding the files, including the unique bar code on each box of files, needed to be imputed into an Excel spreadsheet for electronic storage and searching.  All Doctor's Secretaries within Ms. Fortunato's department, including Ms. Fortunato, were in charge of inputting this information into Excel.

8.   Instead of electronically entering the information, Ms. Fortunato was printing out Excel spreadsheets and handwriting the information on the paper spreadsheet – making electronic searching impossible. When I discovered what Ms. Fortunato was doing, I instructed her to follow the correct procedures.  Rather than following my direction, Ms. Fortunato started to type the information into a Word document, print the document, and then rewrite new information over the same document, once again leaving no searchable electronic record.

9.    UHPS provided Ms. Fortunato and the other Doctor's Secretaries with access to a computer that had Excel on it for training purposes. Additionally, Ms. Fortunato was sent to training classes at Athena pertaining to the new billing and patient scheduling software between May and December of 2013. However, Athena was reluctant to provide Ms. Fortunato with a username and password because they did not believe that Plaintiff was competent with the billing and scheduling programs. Despite these training opportunities, Plaintiff never used Excel as instructed.

10.    Ms. Fortunato also continued to exhibit the same performance problems. She was placed on a Performance Improvement Plan ("PIP") on December 2, 2013. Despite the PIP, Plaintiff's performance did not improve. Ms. Fortunato was subsequently given an overall rating of "Does Not Meet Expectations" on her next performance evaluation and was placed on a second PIP on August 19, 2014. Ms. Fortuanto was instructed that if she did not improve her performance as outlined in the PIP she would receive additional corrective action, up to and including termination.

11.    As a result of Ms. Fortunato's continued poor performance and failure to successfully meet the expectations outlined in her August 19, 2014 PIP, I decided, in consultation with Human Resources Generalist Andreana Williams, to separate Plaintiff's employment on October 29, 2014.

12.    My decision to terminated Ms. Fortuanto had absolutely nothing to do with her alleged disability or age. In fact, I was unaware of Ms. Fortunato's alleged depression prior to making the decision to terminate her employment. Additionally, at no point during her employment did Ms. Fortuanto ever request any accommodations relating to any alleged disability.

3

13.    Plaintiff's position was eliminated after her separation.  Ms. Fortunato's duties were subsumed by the two remaining Doctor's Secretaries in Plaintiff's department, Ms. Campbell and Ms. Buckner.

I declare under penalty of perjury under the laws of the United States and the State of Ohio that the foregoing is true and correct.

_____
Date    5/16

_____
Deborah Conti

4