**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Kathryn Fortunato, | ) | CASE NO. 1:15 CV 1940 |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| Vs. | ) | |
| | ) | |
| University Hospitals Physician | ) | Memorandum of Opinion and Order |
| Services, Inc., | ) | |
| Defendant. | ) | |

**Introduction**

This matter is before the Court upon defendant's Motion for Summary Judgment (Doc. 15) and defendant's Motion to Strike the Alleged Comment of Bart Bixenstine as Hearsay (Doc. 18). This case arises out of the termination of plaintiff's employment by defendant. For the following reasons, the Motion for Summary Judgment is GRANTED and the Motion to Strike is MOOT.

**Facts**

Plaintiff Kathryn Fortunato filed this Complaint against defendant University Hospitals Physician Services, Inc. (Defendant or UHPS) in the Cuyahoga County Common Pleas Court. Defendant removed the case on the basis of federal question jurisdiction.

1

Plaintiff was hired by defendant as a Doctor's Secretary in 2001 at the age of 53. Plaintiff acknowledged at deposition that between 2001 and 2010, she received several corrective actions for failing to perform certain tasks and was issued two Performance Improvement Plans (PIP). (pltf. depo.; Ex. 7)

In the spring of 2013, Deborah Conti began supervising plaintiff.  Conti declares the following. Plaintiff worked with two other Doctor's Secretaries in her department- Carol Campbell and Antoinette Buckner, both of whom are over 40 years old. As a Doctor's Secretary, plaintiff was responsible for answering phones and coordinating physician's schedules which involved patient appointments, tracking research time and clinicals, processing expenses, and maintaining patient charts. Plaintiff exhibited performance deficiencies regarding scheduling patients, maintaining patient charts and records, working the telephones, relaying messages, using the patient scheduling software, communicating with patients, and turning in her timecard. Conti verbally counseled plaintiff on her performance deficiencies on numerous occasions, but plaintiff's performance did not improve.

In May 2013, UHPS transitioned to a new billing system and the electronic storage of medical charts in response to a push by the federal government to move towards electronic records keeping.  As part of the transition, hard copies of patient files were placed in boxes and moved to off-site storage.  In order to keep track of the paper files, information regarding the files needed to be inputted into an Excel spreadsheet for electronic storage and searching.  All Doctor's Secretaries within plaintiff's department were in charge of inputting the information into Excel. Instead of electronically entering the information, plaintiff was printing out Excel spreadsheets and handwriting the information on the paper spreadsheet. This made electronic

searching impossible. When Conti discovered what plaintiff was doing, she instructed her to follow the correct procedures. Rather than following her direction, plaintiff started to type the information into a Word document, print the document, and then rewrite new information over the same document. This also left no searchable electronic document.

UHPS provided plaintiff and the other Doctor's Secretaries with access to a computer that had Excel on it for training purposes. Plaintiff was also sent to training classes at Athena pertaining to the new billing and patient scheduling software between May and December 2013. Athena was reluctant to provide plaintiff with a username and password because it did not believe that plaintiff was competent with the billing and scheduling programs. Despite these training opportunities, plaintiff never used Excel as instructed.

Plaintiff continued to exhibit the same performance problems. On December 3, 2013, she was placed on a PIP, but her performance did not improve. She was subsequently given an overall rating of "Does Not Meet Expectations" on her next performance evaluation and was placed on a second PIP on August 19, 2014. Plaintiff was instructed that if she did not improve her performance as outlined in the PIP, she would receive additional corrective action, up to and including termination. As a result of plaintiff's continued poor performance and failure to successfully meet the expectations laid out in the August 2014 PIP, Conti decided, in consultation with Human Resources Generalist Andreana Williams, to terminate plaintiff's employment on October 29, 2014. Plaintiff's position was thereafter eliminated and her duties were subsumed by the two remaining Doctor's Secretaries- Campbell and Buckner. (Deborah Conti decl.)

The evidence shows that the December 3, 2013 PIP identified five specific areas for

improvement ("effective communication skills," "effective use of Athena," "effective use of UHCare Ambulatory," "acceptance of diverse workforce," and "working according to manager's instructions"). Each of the five areas listed several examples of problems in that area. (pltf. depo. Ex. 9) As noted by plaintiff, she made several handwritten comments on the PIP which disagreed with some of the issues. (*Id.*) Plaintiff also noted thereon, "Any prior dissatisfaction could have been related to the fact I had a medical issue not aware of until noted by PeP and treated as in patient." (*Id.*)

The August 19, 2014 PIP identified four specific areas for improvement ("effective communication skills," "effective use of Athena," "effective use of UHCare Ambulatory," and "Working Collaboratively with the Team") and listed examples as to each area. (pltf. depo. Ex 10) Plaintiff submits what appears to be her handwritten response to the August PIP:

> I would think in view of all the difficulties & stress we have undergone in this Dept with Legal deposition, change in staff management that you would have a little more understanding than to place me as inefficient and undesirable to Find other emp [indecipherable].

(Doc. 17 Ex. 31) The Performance Evaluation was issued the same day with "Does Not Meet Expectations" in most categories. Plaintiff's "Overall Performance" was evaluated as follows:

> Overall, Kathryn has struggled with implementing training she received on new systems, effective communication skills, workflow efficiency and time management. Kathryn has attended retraining on all new systems. We have discussed ways to improve her communication, follow-up and time management skills. In Oct/Nove Kathryn's work duties were reassigned to co-workers and she was re-assigned to a filing project. This caused significant disruption to operations and employee morale. To assist with Kathryn's overall performance she will be placed on a Performance Improvement Plan.

(pltf. depo. Ex. 8) Plaintiff notes that she responded to her Performance Evaluation in part:

> I have never said no to any requests, however last year my work was turned over to Antoinette because they felt there was the need to make a change which shortly afterwards put me in the hospital with severe anemia and a low hemoglobin which

4

> required transfusions; I could not understand why I was not functioning; this has since been solved and is okay.

(*Id.* Ex. 8)

Plaintiff's October 29, 2014 Corrective Action implementing her discharge states, "Since the initiation on the PIP on August 19, 2014, Kathryn has shown very minimal improvement and remained inconsistent in her performance. Kathryn is not meeting minimum standards and is ineffective in the role of a Doctor's Secretary in the Endocrinology division." (pltf. depo. Ex. 11) Plaintiff points out that in her handwritten comments to her discharge, she stated:

> The enclosed reasons for termination are not true or realistic.
>
> I believe I was terminated due to
>
> (1) A recent deposition for a co-worker
>
> (2) My clinical diagnosis of depression recently confirmed by Dr. Acheson
>
> (3) My age of 67 that should not be considered.

(*Id.*)

As further evidence, plaintiff submits a complaint filed in April 2013 by Marsha Kelly, for employment discrimination against David Brooks and University Hospitals Health Systems, Inc. (Doc. 16 Ex. 34) Plaintiff states in her brief that she testified at her own deposition that she was deposed as a witness in the *Kelly* lawsuit in 2014 and rendered testimony favorable to Kelly. Plaintiff cites to page 113 of her deposition but does not attached the cited portion. Plaintiff's complete deposition has not been filed, but portions have been submitted by defendant. Plaintiff testified that "right after Marcia [Marsha] got - she got fired," plaintiff called defendant's attorney in the *Kelly* matter, Bart Bixenstine, at home "because I was so desperate to get help." According to plaintiff, Mr. Bixenstine said, "That doesn't surprise me because I knew you would

be next." Plaintiff testified that she told him, "I'm being harassed, I was worried, what to do, what not to do..." And, "He said it didn't surprise him that I was being- I was the next one on the list." (pltf. depo. 108, 115-117)

Following her termination, plaintiff filed an EEOC charge alleging that she was terminated based on her age and disability.

The Complaint asserts five claims. Count One alleges age discrimination under Ohio law. Count Two alleges disability discrimination under Ohio law. Count Three alleges intentional infliction of emotional distress. Count Four alleges a violation of the Age Discrimination in Employment Act (ADEA). Count Five alleges a violation of the Americans with Disabilities Act (ADA). This Court previously dismissed Count Three.

This matter is now before the Court upon defendant's Motion for Summary Judgment and defendant's Motion to Strike the Alleged Comment of Bart Bixenstine as Hearsay.

**Standard of Review**

Summary Judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56(c)); *see also LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993). The burden of showing the absence of any such genuine issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits," if any, which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(c)). A fact is "material only if its resolution

will affect the outcome of the lawsuit." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). Accordingly, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir.1993). The nonmoving party may not simply rely on its pleading, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 456 (1992). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of his case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322). Moreover, if the evidence is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249-50 (citation omitted).

**<u>Discussion</u>**

Defendant moves for summary judgment on the remaining claims.

**1) ADA**

Counts Two and Five allege that plaintiff was discriminated against on the basis of her disability, depression, under state and federal law because defendant failed to make a reasonable

7

accommodation for her and terminated her employment.  Defendant moves for summary judgment on both bases.  However, plaintiff fails to oppose defendant's arguments on her reasonable accommodation claim.  Summary judgment is appropriate for the reasons stated by defendant.[1]  The Court proceeds to the termination claim.

"Given the similarity of the Ohio and federal statutes governing disability discrimination, analysis of claims made pursuant to the Americans with Disabilities Act applies to Ohio discrimination claims."  *Swank v. Caresource Management Group Corp.,* 2016 WL 4376432 (6th Cir. August 17, 2016) (citations omitted).   The Americans with Disabilities Act forbids employment discrimination on the basis of disability. 42 U.S.C.A. § 12112(a). Under the familiar *McDonnell Douglas* burden-shifting framework, plaintiff bears the initial burden of establishing a prima facie case of discrimination. The burden then shifts to defendant to articulate a legitimate, nondiscriminatory reason for the termination. Plaintiff  must then present evidence from which a jury could find that defendant's proffered reason is merely pretextual.

Plaintiff argues she has direct evidence of discrimination.  This issue must be resolved first as "the framework differs" between cases where plaintiff has direct evidence of discrimination and those in which plaintiff has only indirect evidence.  *Ferrari v. Ford Motor Company,* 826 F.3d 885 (6th Cir. 2016).  For the following reasons, plaintiff does not have direct evidence.[2]  In sum, plaintiff argues that defendant's attorney (in the previous *Kelly* matter)[3] Bart

---

[1] Although plaintiff seems to argue that she would have been qualified for her position with a reasonable accommodation, i.e., proper training on Excel, this relates to her termination claim.

[2] Defendant has filed a separate Motion to Strike the Alleged Comment of Bart Bixenstine as Hearsay (Doc. 18).  Because, as discussed herein, the alleged comment does not constitute direct evidence, the Court need not strike the

Bixenstine's comment, "You're next on the list" is direct evidence of disability and/or age discrimination. The comment is not direct evidence for several reasons.

First, Bixenstine was not a decisionmaker. The Sixth Circuit has repeatedly recognized:

> If discriminatory statements are offered as direct evidence of discrimination, those statements must come from the decisionmakers responsible for the adverse employment decision. Statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process itself cannot suffice to satisfy the plaintiff's burden of demonstrating animus.

*Richardson v. Wal-Mart Stores, Inc.,* 2016 WL 4709865, - F.3d - (6th Cir. September 9, 2016) (citing *Geiger v. Tower Auto,* 579 F.3d 614 (6th Cir. 2009) (internal marks omitted). The evidence is undisputed that Conti and Human Resources Generalist Williams made the decision to terminate plaintiff. (Conti decl. ¶¶ 11-12). There is no evidence that Bixenstine was the decisionmaker or that his statement was related to the decisionmaking process. Plaintiff cites to *Cooley v. Carmike Cinemas, Inc.*, 25 F.3d 1325 (6th Cir. 1994), for the proposition that the statement in question be made "by a decisionmaker or by an agent within the scope of his employment." Plaintiff asserts that Bixenstine was an agent of defendant. However, that case made clear that the statement must be "related to the decision-making process." *Id.* There is no evidence here that Bixenstine's comment was related to the decision to terminate plaintiff.

---

comment as hearsay.

[3] Bixenstine is a retired attorney with defendant's current counsel's law firm. Defendant states that Bixenstine was its "former outside counsel." (Doc. 18 at 2) Submitted with the Motion to Strike is defendant's current counsel's affidavit explaining that his law firm is retained by UHPS for discrete matters and is not general employment counsel. His law firm handled the separate matter referenced by plaintiff herein filed by Marsha Kelly. But, its retention concluded upon the dismissal of that lawsuit in March 2014. The law firm was retained again when plaintiff herein filed her lawsuit in August 2015. (David Campbell aff.)

Second, Bixenstine's alleged comment requires an inference and, therefore, is not direct evidence. *Stansberry v. Air Wisconsin Airlines Corp.,* 651 F.3d 482 (6th Cir. 2011) (A statement is not direct evidence of discrimination if it requires an inference.); *Stockman v. Oakcrest Dental Center, P.C.*, 480 F.3d 791 (6th Cir. 2007) (same).  Plaintiff maintains that because Kelly's lawsuit alleged gender and disability discrimination, the "obvious meaning" to plaintiff or a rational juror "was that defendant would soon be firing her unlawfully, as it had done to Kelly, and claiming poor performance as a pretext."  (Doc. 16 at 10-11, Doc. 20 at 3) The Court disagrees. Even if Mr. Bixenstine meant by his comment that plaintiff was the next to be fired, it did not necessarily mean she was going to be fired because of her age or disability.[4]

Third, and related to the discussion immediately above, the alleged comment is vague and ambiguous.  "[G]eneral, vague, or ambiguous comments do not constitute direct evidence of discrimination because such remarks require a factfinder to draw further inferences to support a finding of discriminatory animus." *Curry v. Brown,* 607 Fed.Appx. 519 (6th Cir. 2015) (citing DiCarlo v. Potter, 358 F.3d 408, 415 (6th Cir.2004)).  At a minimum, Bixenstine's comment is

---

[4] Additionally, "In the context of age discrimination, only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of age, satisfy this criterion." *Treadway v. California Products Corporation,* --- Fed.Appx. ----2016 WL 4073306 (6th Cir.August 1, 2016) (internal quotation marks omitted) (quoting *Scott v. Potter*, 182 Fed.Appx. 521 (6th Cir. 2006)).  It appears that the *Kelly* lawsuit did not even allege age discrimination.  Therefore, no logical person could understand that Bixenstine meant "you're next in line because of your age."

ambiguous because it could have numerous interpretations as to its meaning.

Finally, the comment is isolated. "[I]solated and ambiguous comments are too abstract, in addition to being irrelevant and prejudicial, to support a finding of discrimination." *Hartman v. Dow Chemical Company,*. 2016 WL 4363161, - Fed.Appx- (6th Cir. August 16, 2016) (citations omitted). One comment made by a non-decisionmaker is insufficient to amount to direct evidence.

To establish a claim for disability discrimination under the indirect method, a plaintiff must first establish a prima facie case of discrimination by showing that (1) he or she is disabled, (2) he or she is otherwise qualified for the position, with or without reasonable accommodation, (3) he or she suffered an adverse employment decision, (4) the employer knew or had reason to know of the plaintiff's disability, and (5) the position remained open while the employer sought other applicants or the disabled individual was replaced. *Ferrari v. Ford Motor Company,* 826 F.3d 885 (6th Cir. 2016) (citations omitted) Defendant argues that plaintiff cannot meet the first, second, fourth, or fifth elements.

Plaintiff must show she is disabled. "Under the ADA, the term "disability" means a physical or mental impairment that substantially limits one or more major life activities of an individual; a record of such an impairment; or being regarded as having such an impairment." *Ferrari*, citing 42 U.S.C. § 12102(1). Plaintiff points to the following evidence. She testified that her disability is depression and that she was first diagnosed in September 2008 when she gave her supervisor at the time a letter (dated September 9, 2008) from Jennifer Levin, Ph.D. which states in full: "Dear Dr. Arafah, This letter is to confirm that Ms. Kathryn Fortunato is under my care for the treatment of an anxiety disorder. She will be undergoing cognitive

11

behavior therapy twice monthly." (Doc. 17 Ex. U; pltf. depo. 22-25) Plaintiff testified this was the only time she presented a letter to defendant. (pltf. depo. 25) Plaintiff also testified that in 2008 or 2009, she "probably" told Carol (a co-worker) that she was on medication. (*Id.* 87) Plaintiff further points out that she noted on her December 2013 PIP, "Any prior dissatisfaction could have been related to the fact I had a medical issue not aware of until noted by PeP and treated as in patient." (pltf. dpo. Ex. 9) In addition, plaintiff testified that when she met with Conti and a Human Resources representative regarding her PIPs, she "tried to tell them she was on medication for depression." (*Id.* 77-78, 99) Finally, plaintiff's EEOC charge states that she advised Conti, her supervisor, in October 2014, that she had a disability. (pltf. depo. Ex. 2)

Plaintiff's evidence is not sufficient to show she is disabled or that defendant was aware of her depression. Plaintiff states that her disability is depression. However, plaintiff relies on a 2008 letter which diagnosed her with an anxiety disorder. Further, her handwritten note on her December 2013 PIP references a "medical issue" but does not mention depression. Assuming plaintiff is arguing that her disability substantially limits the life activity of working, plaintiff testified that she never asked her supervisors for accommodations or training so that she could perform her job (pltf. depo. 46-47) and she could not recall that her doctor ever imposed work restrictions. (*Id.* 9) At most, plaintiff testified that she told Conti and the HR representative during meetings in 2014 that she was on medication for depression. But, this is insufficient to show that plaintiff had a record of a disability or was regarded as disabled.[5]

Assuming plaintiff has demonstrated that she had a known disability, defendant has

---

[5] Plaintiff also asserts that her "anxiety and depression impacted her ability to learn new computer programs, qualifying her as handicapped under Ohio law." (Doc. 16 at 19) But, plaintiff does not present evidence of such.

12

demonstrated that plaintiff was not qualified for her position. "To establish that she was qualified for a position already held, a plaintiff must demonstrate that she was meeting her employer's legitimate expectations and was performing to her employer's satisfaction." *Oliver v. St. Luke's Dialysis LLC,* 491 Fed.Appx. 586 (6th Cir. 2012) (citations omitted) As discussed above, plaintiff was placed on two PIPs which outlined numerous issues of poor performance and she received a "Does Not Meet Expectations" performance evaluation. At most, plaintiff points to her handwritten comments disagreeing with some of the examples identified in the areas for improvement.  Many examples remain uncontradicted. Moreover, plaintiff admitted at deposition that she had issues with the telephones, relaying messages, patient scheduling errors, and responding to meeting invites.  (pltf depo. 42, 45, 75-77, 98) Plaintiff also points to comments she made in responding to her PIPs and evaluation.  But, plaintiff's reference to a "medical issue" and  her comment that she would have expected "a little more understanding than to place me as inefficient and undesirable" do not raise issues of fact as to defendant's legitimate expectations as to whether plaintiff was performing her job. Plaintiff simply does not offer credible evidence countering defendant's evidence that she was not qualified for her position. Further, plaintiff asserts that she asked for help to learn the new systems, but was refused.  (Doc. 16 at 18) But, plaintiff does not support this assertion.  Rather, plaintiff does not dispute Conti's averment that plaintiff was sent to training classes at Athena pertaining to the new billing and scheduling software.  Yet, plaintiff testified that while some training was offered, she never tried to put the medical records into Excel.  (pltf. depo. 38) Notwithstanding, plaintiff's PIPs show that her performance issues went beyond mastering Excel.  (pltf. depo. Exs. 9, 10)

   Even assuming she could establish the other elements, plaintiff cannot satisfy the final

element.  Conti avers that following her termination, plaintiff's position was eliminated and her duties were subsumed by the two remaining Doctor's Secretaries- Campbell[6] and Buckner. Plaintiff argues in her brief that Conti's testimony is contradicted by plaintiff's testimony that she observed young women coming to the office to interview for secretarial positions following her termination.  (Doc. 16 at 18) Plaintiff's deposition testimony in this regard is pure speculation:

> Q.  But you don't know if anybody was brought in?
>
> A. No.  I know they had a couple girls coming through the door, and they looked like they were prospects to be interviewed, but I never questioned it.  You don't question everybody that comes through the door.
>
> Q. Aside from seeing some younger women coming through the door, you don't know if they were there for job interviews or what, right?
>
> A. Never asked.

(pltf. depo. 88) There is no evidence that plaintiff was replaced or that the position remained open while defendant sought other applicants.  For these reasons, plaintiff fails to establish a prima facie case.

Assuming plaintiff does establish a prima facie case, she cannot show that the decision to terminate her was actually a pretext for disability discrimination. Defendant has set forth a legitimate, non-discriminatory reason for plaintiff's dismissal- her poor performance.  This is evidenced by two PIPs and a Performance Evaluation. Plaintiff "can show pretext in three interrelated ways: 1) that the proferred reasons had no basis in fact, 2) that the proferred reasons did not actually motivate the employer's action, or 3) that they were insufficient to motivate the

---

[6]   In fact, plaintiff testified that Campbell suffered from depression and took medication as a result. (pltf. depo. 104-105)

employer's action." *Ferrari,* 826 F.3d at 895 (citations omitted).

As to these three routes, "The first category implicates evidence that the proffered basis never occurred; the second category requires a plaintiff to admit the factual basis underlying the proffered reason and also admit that the reason could motivate the adverse action, but prove in reality it did not; the third category is a direct attack on the credibility on the employer's proffered motivation and may consist of evidence that employees outside the protected class were not disciplined despite the fact that they engaged in substantially identical conduct as the plaintiff." *Deister v. Auto Club Ins. Ass'n*, 647 Fed.Appx. 652 (6th Cir. 2016) (citations omitted)

It is unclear as to which of the three ways plaintiff is attempting to demonstrate pretext. She argues three bases: First, despite the assertion by defendant that she was a poor performer, she had not been placed on a PIP between 2003 and December 2013, and her evaluations prior to Conti's appearance were generally good.  Second, Conti gave plaintiff her 2014[7] Performance Evaluation and 2014 PIP at the same time, but then failed to hold follow-up meetings as required in the PIP.  Third, Bixenstine's statement to plaintiff that she was "next on the list" to be fired is evidence of pretext.

Plaintiff has not raised an issue of fact as to pretext based on these three arguments.  As to the first, plaintiff contends that she was generally performing well before Conti became her supervisor, and she asserts elsewhere in her brief that Conti's evaluation was "unwarranted." (Doc. 16 at 2) However, plaintiff acknowledged at deposition the accuracy of a summary prepared by defendant of plaintiff's work performance from 2001-2011. (pltf. depo. 57-59; Ex. 7)  She received two PIPs in 2001. Between 2002 and 2010, she received five corrective actions.

---

[7]   Plaintiff refers to her "2013 evaluation," but clearly means her 2014 evaluation.

(*Id.*)  In fact, plaintiff questioned the "fairness" of that prior discipline and indicated that her prior supervisor, David Brooks, was unfair.  (pltf. depo. 58-59).  Moreover, as discussed earlier, plaintiff does not submit evidence showing that the PIPs issued by Conti were "unwarranted."  In fact, plaintiff admitted at deposition to having issues in most of the areas cited in the PIPs.

Next, plaintiff takes issue with Conti's failure to have follow-up meetings, even though referred to in the PIPs. However, this does not undermine the factual basis of the PIPs or the Performance Evaluation. Moreover, plaintiff asserts in her brief that "the record is devoid of evidence" of any follow-up meetings and this leads to the conclusion that they were not warranted because plaintiff's performance was improving. (Doc. 16 at 9) However, it does appear that the meetings took place.  Plaintiff testified:

> Q.  I'm happy to go through them, but you got two performance improvement plans, right?
>
> A. Right.
>
> Q. And then you guys met a number of times, right?
>
> A.  Right.
>
> Q.  And HR came down, right?
>
> A.  Yeah.  And during those times, I tried to tell them that I was on medication for depression, please stop screaming and yelling at me, please stop throwing things at the table.  They just kept right on going, and he said, "That's your problem, not mine."

(pltf. depo. 99) And elsewhere:

> Q. So there were meetings with HR and Deb?
>
> A. No. Just her.  And she brought down the other girl, that Williams girl.
>
> Q.  She's in human resources?

16

>A. Yeah. Uh-huh.
>
>Q. They would meet with you and review your performance before your discharge?
>
>A. They would meet with me, but nothing was ever- nothing was ever worked out.

(*Id.* 77) The Court can only assume based on plaintiff's own testimony that follow-up meetings did occur.

Finally, for the reasons discussed above, Bixenstine's comment is immaterial and is not evidence of pretext.

For these reasons, plaintiff's disability claim fails.

**(2) ADEA**

As with other employment discrimination claims, age discrimination may be proven through either direct or circumstantial evidence and both the state and federal claims are analyzed in the same manner. Plaintiff claims she has direct evidence of age discrimination. As discussed earlier, direct evidence proves the existence of discriminatory bias "without requiring any inferences." However, as the Court has already determined, Bixenstine's comment is not direct evidence. Thus, plaintiff must prove her case through circumstantial evidence. To establish a prima facie case of age discrimination, the plaintiff must demonstrate that: "1) that she was a member of a protected class; 2) that she was discharged; 3) that she was qualified for the position held; and 4) that she was replaced by someone outside of the protected class." *Richardson, supra* (citations omitted) The burden then shifts to the employer to offer a legitimate, nondiscriminatory reason for the adverse employment decision. If the employer meets this burden, the employee must rebut the proffered reason "by proving that it was pretext designed to mask discrimination." *Id.* "To prevail on an ADEA claim, the plaintiff must

17

demonstrate that "age was the 'but-for' cause of the challenged adverse employment action. *Id.*

At a minimum, plaintiff cannot satisfy the prima facie case because, as discussed above, two secretaries already within the department took over her duties after the termination. Conti states that both Campbell and Buckner are over 40 years old.  (Conti decl.) Therefore, they are not outside the protected class.  Additionally, plaintiff testified that Campbell was 66 or 67 years old and  Buckner was in her 40s. (pltf. depo. 92).   Although plaintiff alleges in her Complaint that she was replaced by the hiring of a person under the age of 40, plaintiff has no evidence of such.  Rather, when asked at deposition whether she knew if anybody was hired to replace her, plaintiff responded, "I don't recall. I don't know a thing."  (pltf. depo. 29)

Plaintiff cannot establish a prima facie case of age discrimination.  Nor can she show pretext, as discussed above.  Ultimately, plaintiff has no evidence that age was the "but-for" cause of her termination.[8]

For these reasons, summary judgment is warranted on all remaining claims.

**Conclusion**

For the foregoing reasons, defendant's Motion for Summary Judgment is granted and the Motion to Strike is moot.

IT IS SO ORDERED.


 /s/ Patricia A. Gaughan  
PATRICIA A. GAUGHAN  
Dated: 10/17/16                    United States District Judge

---

[8]  Additionally, the Court notes that plaintiff was 53 years old when she was first hired.